## M. C. KINGSBURY ET AL. v. WACO STATE BANK.

Decided November 12, 1902.

**1.—Verdict—Judgment—Party Tendering No Issue.**

Where a defendant filed no answer and his trustee in bankruptcy one which amounted only to an appearance, but tendered no issue (an adoption of the answer of the bankrupt), there was no error in rendering judgment against the trustee on a verdict which found for the plaintiff only against other defendants.

**2.—Fraud—Loan of Money to Assist.**

One loaning money to another to assist in a business carried on by the latter in the name of a third, in order to hinder, delay, and defraud his creditors, did not, thereby, become a party to the fraud, since the loan of money could not contribute to such result.

**3.—Evidence—Admitted Fact.**

Permitting improper evidence of a fact admitted by the party complaining, is not ground for reversal.

**4. Ruling Not Prejudicial to Complainant.**

Refusal to admit evidence which could only have benefited a party who has recovered judgment, can not be complained of on appeal by his codefendant.

**5.—Evidence—Explanation of Conduct.**

Where the fact that defendant took possession of and sold a stock of goods, run by another, was relied on to show that he was the real owner, he should have been allowed to explain his act by showing that he took possession to secure a debt owing by the proprietor to himself. So the fact that defendant had paid other notes claimed by him to be forgeries, as was claimed of the one in suit, could be explained by showing his reasons for so doing and that it was done in ignorance of some of the facts and of his legal liability.

**6.—Evidence—Forgery—Other Forgeries.**

On the issue of the genuineness of a note sued on and claimed to be forged, evidence of forgery of other obligations and on other persons by the party charged with this, was not admissible. Knowledge and intention were not here in issue, as in criminal prosecutions where similar testimony is admitted.

**7.—Same.**

Where it was claimed that defendant's signature to the note sued on had been forged by one K., evidence that K. had previously exhibited to a witness skillful, forged signatures of such defendant, and talked of raising money on them, was admissible.

**8.—Bill of Exceptions—Objection to Evidence.**

Error in exclusion of evidence may be considered, though the bill of exceptions does not show that any special ground of objection was assigned.

**9.—Practice on Appeal.**

  On reversal of judgment against the makers of a note, on their appeal, judgment in favor of a defendant alleged to be an indorser, may be affirmed.

Appeal from the County Court of McLennan County.   Tried below before Hon. G. B. Gerald.

*Baker & Ross, O. L. Stribling,* and *H. N. Atkinson,* for appellants.

*Boynton & Boynton,* for Waco State Bank, appellee.

*D. A. Kelley,* for Philip Speegle, appellee.

STREETMAN, ASSOCIATE JUSTICE.—Waco State Bank, appellee, brought this suit originally against M. C. Kingsbury, Duncan McLennan, and J. M. McLennan as makers, and Philip Speegle as indorser, of a note for $1000, admitting a credit of $177.63.

There is no answer in the record for M. C. Kingsbury.   It appears, however, that after the suit was brought he was adjudged a bankrupt, and Dudley M. Kent was appointed and qualified as trustee of his estate in bankruptcy, and after this, before the trial, Kingsbury died.

The two McLennans and Speegle filed answers denying the execution of the note by them, and alleging that their signatures were forged by Kingsbury.   Dudley M. Kent, as trustee of the bankrupt estate, filed a pleading which contains no special answer, nor even a general denial, but only purports to adopt the pleadings formerly filed by Kingsbury, the fact being, as stated, that no pleadings for Kingsbury had been filed.

Trial was had by a jury and the following verdict was rendered: "We the jury find for plaintiff against Duncan McLennan and John McLennan for amount of note and costs and attorneys' fees, and for defendant Speegle."

The court thereupon rendered judgment in favor of Speegle for his costs and in favor of plaintiff against Dudley M. Kent, as trustee in bankruptcy, and against John M. and Duncan McLennan on the note.

Duncan McLennan and J. M. McLennan have appealed, making their appeal bond payable to plaintiff and to Kent, trustee in bankruptcy, and to Speegle.

The first assignment of error complains that the court had no authority to render final judgment against Kent as trustee in bankruptcy, because the verdict did not find against him.   It is true that when an issue is made by the pleadings there must be a finding of the jury on that issue to support a judgment.   Ablowich v. Bank, 67 S. W. Rep., 79, 4 Texas Ct. Rep., 394.   In this case, however, no issue was raised as to the execution of the note by the defendant Kingsbury.   The record contains no pleading whatever filed by him before his death, and the pleading filed by his trustee in bankruptcy presents no issue, and

only amounts to an appearance. There was therefore no error in rendering judgment against the trustee in bankruptcy.

The second assignment of error complains of a special charge given at the request of plaintiff, which contains the statement that there was evidence that M. C. Kingsbury was doing business with authority of Duncan McLennan and in his name; and then submits the issue as to the authority of Kingsbury in the course of this business to sign the name of Duncan McLennan to the note in question. As the case will be reversed on other assignments, we need not determine whether there was error in this charge or not, but we would suggest that it would be better to eliminate the objectionable statements upon another trial.

There was no error in refusing charge number 1, requested by defendants, to the effect that if Kingsbury was doing business in the name of Duncan McLennan, in order to hinder, delay or defraud his creditors, and the plaintiff, knowing said facts, loaned him the money in question to assist him in said business, that plaintiff could not recover. The lending of this money by plaintiff could not have operated in any way to hinder, delay or defraud the creditors of Kingsbury.

The fourth assignment complains of the admission in evidence of the city directory, showing that the Racket Store was in the name of Duncan McLennan, said McLennan having denied any knowledge that the directory contained such statement. The error, if any, in admitting this testimony was cured by the admission of Duncan McLennan that said business was carried on in his name, this being the only fact established by said directory.

The fifth assignment complains of the refusal to permit defendant Speegle to explain his failure to go to see plaintiff, after being notified of the note in question. This evidence could have affected no one but Speegle, and as the jury found in his favor, and we will finally dispose of him in our judgment, the error, if any, becomes immaterial.

The seventh assignment complains of the refusal to admit certain testimony of Duncan McLennan. Plaintiff had shown that Duncan McLennan took possession of the stock of goods known as the Racket Store, and sold it for $100. To explain this, Duncan McLennan would have testified that Kingsbury owed him about $8000, and it was for this reason that he took possession of the stock of goods.

There is a phase of the case which we think renders this evidence admissible. One theory of the plaintiff was that Kingsbury was running the Racket Store in the name of Duncan McLennan, and had general authority, in the course of that business, to incur obligations in the name of Duncan McLennan. The fact that Duncan McLennan took charge of the store and sold out the stock of goods was a circumstance to support that theory, and was doubtless introduced for that purpose by plaintiff. To explain this circumstance, McLennan should have been permitted to show that he took possession of the business, not because it was virtually his business, but in order to collect an indebtedness owing to him by Kingsbury.

We are also of the opinion that the eighth assignment of error should be sustained. Plaintiff had shown that the defendant had paid off a number of other notes to it, which he claimed on the trial were forged by Kingsbury, and that these notes were paid by Duncan McLennan a month after suit was instituted on this note. The natural inference from this evidence was that the notes were not forged, as claimed by McLennan, otherwise he would not have paid them; and if they were genuine, it tended to show that the note in suit was also genuine, having been executed either by Duncan McLennan himself or his name having been signed by Kingsbury, under the general authority which he had from Duncan McLennan. To repel the force of this testimony, and show why he had paid the other notes after this suit had been brought, and had not also paid the note in question, he offered to show that the other notes had been presented to him by the bank for payment before he knew anything about the note here sued upon, and as he had done business with the bank for a long time, and was anxious to see it paid, he promised them to pay the other notes, and arranged to borrow money on his land to pay them; and that after this suit was brought he did not know that his promise to pay said forged notes was not binding upon him, and paid them because of his previous promise. We are clearly of the opinion that he had the right, under the circumstances, to make this explanation of his conduct.

The ninth assignment of error complains of the exclusion of the evidence of C. Davis. He would have testified as follows: That Kingsbury and J. W. Gray were working together in a store in which he (witness) was temporarily employed; that they spent a good deal of their time together fixing up papers; that on one occasion Kingsbury came to him and asked him to write his name; that he wrote it, and Kingsbury asked him whether he wrote it "Cap" Davis or "C" Davis. That said witness stated to Kingsbury that he wrote it C. Davis. * * * That some time afterwards a note was presented to him for payment purporting to have been executed by him to J. W. Gray, and that the note was in the handwriting of M. C. Kingsbury, and the signature "C. Davis" was a good imitation of his signature. That the note was a forgery, and that this occurred about the time of the execution of the note sued on in this case.

It is insisted that this evidence is admissible on the general issue of forgery in this case, and particularly to rebut the testimony of one of plaintiff's witnesses, who had testified that in his opinion Kingsbury was not artist enough to have executed the signatures to the note sued on. Answering the last objection, we will say that if it was proper to permit the plaintiff's witness Tolson to give his opinion of the ability of Kingsbury as an artist, which we doubt, still we do not think that this was the proper method to rebut that testimony.

The other question is one of some difficulty. In criminal cases upon a trial for forgery and for uttering forged instruments, as well as in cases of theft, burglary, etc., it is permissible to prove the commission

by the defendant of similar offenses at or about the time of the commission of the offense alleged. And if Kingsbury were on trial in a criminal case, charged with the forgery of the note sued on, we think the evidence might be admissible. It would be admitted, however, only for the purpose of showing the intent of the defendant, in case it should be shown by other evidence that Kingsbury wrote the names of the McLennans on the note. It would not be admitted to show whether or not Kingsbury did in fact write their names on the note, but only for the purpose of showing whether he did so in good faith, believing he had authority to sign them. Referring to the cases in which proof has been admitted of the commission of other similar offenses at or near the time of the alleged offense, Greenleaf says: "Those will be found to have been cases in which the knowledge or intent of the party was a material fact, on which the evidence, apparently collateral, and foreign to the main subject, had a direct bearing, and was therefore admitted." 1 Greenl. on Ev., sec. 53. This evidence, therefore, was not admissible in this case, unless the knowledge or good faith or intent of Kingsbury was a material inquiry. But of what consequence, as far as the liability in this case is concerned, was the intent of Kingsbury? In a criminal case if he had shown that he signed the names of the McLennans in good faith, believing he had authority to do so, it would have afforded a defense; but the issue here was simply whether the names of the McLennans were signed to the note by themselves or by their authority. If so, they were liable; if not, they were not liable. If Kingsbury had no authority to sign their names, the fact that he believed that he had such authority would not make them liable. His intent and good faith and knowledge were not issues in the case. The evidence was therefore properly excluded.

The tenth assignment of error presents a question somewhat similar, but, as we have concluded, different in effect from that just considered.

The defendants offered to prove by R. A. Hamilton that during the fall of 1898 or 1899 he had a conversation with defendant M. C. Kingsbury, in which they discussed the matter of forming a partnership and going into business together; that said witness had stated to said Kingsbury that he, witness, had only $500 or $600 in money, and that at least $2500 in money would be necessary to start said business; that Kingsbury spoke of having some notes, which he thought he could collect for about $2000, and witness told him that he thought that was too uncertain a basis to begin business on. That Kingsbury then stated that he had a rich father-in-law (meaning defendant Duncan McLennan) who had rather gone back on him, but that he could raise money on the old man's notes, as he could imitate his signature so closely that the old man couldn't deny it; and thereupon the said Kingsbury drew a paper from his pocket with the name of Duncan McLennan written thereon, and proceeded in the presence of the witness to make an exact duplicate or facsimile of said name, and that the said signatures were very much like the genuine signatures of Duncan McLennan offered in

evidence on the trial. This evidence was excluded by the court upon the objection of plaintiff.

This evidence presents a different question from that raised by the testimony of the witness Davis. By Davis it was proposed to show an independent forgery of a name not signed to the note in suit; but by this witness it was proposed to show that Kingsbury had, in his presence, made an imitation of the signature of Duncan McLennan, one of the defendants, and expressed his intention of forging his signature to notes. In a note to the section above quoted, after showing that evidence of contemporaneous offenses was only admissible to show knowledge and intent, it is said: "When a prisoner is tried for a particular crime, it is always competent to show upon the question of his guilt, that he had made, or attempted at some prior time to commit the same offense (citing People v. O'Sullivan, 104 New York, 483). Upon the same principle, it is competent to show that one charged with rape had previously declared his intention to commit the offense, or had previously made an unsuccessful attempt to do so."

The case of Penn Insurance Company v. Philadelphia Railway Company, 25 Atlantic Reporter, 1043, presented a similar question. It was claimed that John R. Baker, Jr., had forged certain signatures of John R. Baker, Sr., to transfers of stock certificates. It was shown that John R. Baker, Jr., had run away, and in his desk which was broken open was found a sheet of paper containing a genuine signature of John R. Baker, Sr., and in the same desk were a number of forged signatures of John R. Baker and Elizabeth Baker, in various stages of execution, some written in full, some half written, showing that John R. Baker, Jr., had industriously practiced the imitation of their signatures.

This evidence was permitted to go to the jury, and the Supreme Court of Pennsylvania in discussing the admissibility of the evidence says: "It was putting in evidence the workshop and material in and by which the nefarious business had been carried on and by means of which the forgeries in this case had been accomplished. It was not only not irrelevant, but had a direct tendency to prove the plaintiff's allegation that John R. Baker, Jr., had fabricated the signatures in question; for it showed him in the very act, as it were, of practicing for the forgeries which he made. It was in no sense an offer to show that a man has committed one forgery by proof that he has committed another, but an offer to show that he had committed the particular forgeries in question by producing the means and the models by which he had worked in manufacturing the particular forgeries which were the subject of this suit."

The same course of reasoning leads us to conclude that the testimony of the witness Hamilton presented facts so clearly connected with the fact in issue in the case, that it should have been admitted as a circumstance to show whether or not Kingsbury forged the signatures to the note in suit.

We are urged to disregard appellants' bills of exception to the exclusion of the evidence discussed in the foregoing assignments, because the bill does not show what objection was made in the lower court, and that we can not revise the ruling of that court without knowing precisely what it was. There are some authorities which seem to sustain this contention, but under the rule now adopted by our Supreme Court the bills are entitled to be considered. Waller v. Leonard, 89 Texas, 507.

The defendant Speegle was only sued as an indorser on the note. The jury found in his favor. The plaintiff does not complain of this finding, and we are unable to see that the liability of the other defendants is in any way dependent upon his liability, or that they would be in any manner affected by the judgment in his favor.

The judgment will therefore be affirmed as to the defendant Speegle; and for the errors above mentioned, it will be reversed and remanded as to the other defendants.

*Affirmed in part and reversed and remanded in part.*