## TEXAS OSAGE CO-OPERATIVE ROYALTY POOL, Inc., et al. v. CRUZE et al.

### No. 9526.

Court of Civil Appeals of Texas.
Austin, Texas.

Nov. 28, 1945.

House, Mercer, Edwards, & Irvin, of San Antonio, for appellants.

L. D. Hill and Saunders & Saunders, all of San Antonio, for appellees.

BLAIR, Justice.

As concerns this appeal appellee Joe Cruze sued appellants, Texas Osage Co-Operative Royalty Pool, Inc., et al., in ordinary form of trespass to try title to recover 2,328 acres of land in Hays County, Texas, and in addition alleged that if defendants were claiming any interest or title in the land under a mineral deed, dated April 15, 1929, recorded in Vol. 100, pp. 181, 182, Deed Records of Hays County, appearing to have been signed by appellee Joe Cruze and his wife, Gladys Cruze, and conveying to L. B. Cummings an undivided one-half interest in and to the oil, gas and mineral rights in the land, that neither appellee nor his wife signed such mineral deed, and it was in fact a forged instrument; and that therefore neither L. B. Cummings, the purported grantee, nor any of the defendants acquired any title or interest by virtue of or through other conveyances emanating from the forged mineral deed; which appellee sought to cancel as constituting cloud upon title to the land.

In answer to the only special issue submitted, the jury found that appellee Cruze did not sign the mineral deed, and accordingly the judgment canceled it as constituting cloud upon title to the land; hence this appeal.

Appellants present forty-three points of error, most of which raise questions of admissibility of evidence. The first two points complain of the introduction of the Deed Records of Hays County, Texas, showing an oil and gas lease from Gay Harris and wife to Balsar Blum, dated May 3, 1929, recorded in Vol. 100, p. 140 of said deed records; and also showing a mineral deed from Harris and wife to Balsar Blum of the same date, recorded in Vol. 100, pp. 143, 144 of said deed records. The objection made to the introduction of the record of these instruments was that no notice was given or filed three days before the trial of the intention to offer them in evidence as required by the provisions of Art. 3726, as amended, Vernon's Ann.Civ.St. art. 3726. These questions become immaterial under our view that it was error to introduce the record of these instruments, and particularly of the mineral deed of Harris and wife to Blum, together with Harris' testimony that he did not sign the mineral deed, and that it was a forgery. Points 3

to 10, both inclusive, raise the foregoing questions.

As pleaded and proved this suit was one to remove as cloud upon title of the Cruze land the alleged forged mineral deed from Cruze and wife to Cummings. The sole fact issue involved was whether Cruze signed the mineral deed, or whether it was a forgery. The objections made to the introduction of the record of the oil and gas lease and the mineral deed from Harris and wife to Balsar Blum were that they were transactions with other persons, and were irrelevant, immaterial, and highly prejudicial, and in violation of the well-settled general rule that res inter alios acta are incompetent evidence, and particularly so in a civil case. The evidence was admitted upon the theory that it came within the exception to said general rule providing that wherever prior plan, scheme, system or design become relevant in a civil case, evidence may be offered to establish such prior plan, scheme, system or design which included the doing of the act charged as a part of its consummation. We are of the view that the facts do not bring the instant case within such exception to the general rule as applied by the courts of this State. They will be stated in substance, showing the manner and time of the introduction of the evidence here complained of.

In the year 1929 Balsar Blum of San Antonio, Texas, was engaged in the business of securing oil and gas leases and mineral deeds, and from January to August, 1929, he secured many such leases and mineral deeds throughout the Wimberley vicinity in Hays County, Texas.

Appellee Cruze testified that Blum came to his ranch and obtained a regular 88 form oil and gas lease on the 2,328 acres of land in question, for a consideration of 25¢ per acre; that he and his wife, Gladys Cruze, now deceased, signed and acknowledged the lease in the living room of their ranch house, before Eli Hill, a justice of the peace and ex officio notary public of Hays County, Texas, now deceased; . that Hill came with Blum, but did not have a notary seal with him; that appellee desired a copy of the lease, and offered to send some one for a notary seal while a copy of the lease was being prepared, but that Blum told him that he and Hill would be in the nearby town of Wimberley later in the day, and would have a copy of the lease for appellee at the time, and that the notary seal would be then placed on the lease by Hill, to

which Hill agreed; and the lease was then delivered and a check for 25¢ per acre was delivered to appellee; that Blum and Hill did not meet appellee in Wimberley as agreed; and that appellee did not see Blum until about one year later in Blum's office in San Antonio, Texas, where appellee went to see him a few days after discovering that the mineral deed in controversy had been recorded in the Deed Records of Hays County, Texas, on April 1, 1930; the mineral deed being dated April 15, 1929, the original of which was attached to the interrogatories of Balsar Blum and introduced in evidence. Appellee Cruze further testified that he did not sign the mineral deed, and that his purported signature thereto was a forgery.

Balsar Blum testified by deposition that from January to August, 1929, he secured many oil leases and mineral deeds throughout the Wimberley vicinity in Hays County; that Eli Hill usually went with him and acted as notary in most instances, and usually placed his seal on such instruments wherever the acknowledgment was taken; that on April 15, 1929, he and Hill went to the Cruze ranch and he obtained a regular 88 form oil and gas lease and the mineral deed on the regular form E 3000-Royalty Contract-Class 4 therefor, for L. B. Cummings; that he filled in the blank spaces in the instruments, on a typewriter which he had with him, as to the names of the parties and the description of the land, and filled in the notary's jurat on each instrument with a pen and ink; that Joe Cruze and his wife, Gladys Cruze, then signed both instruments in his presence and in the presence of Hill, who at the time took their separate acknowledgments, and signed and affixed his notary's seal thereon at the time; that Cruze and wife then delivered him the lease and mineral deed, and he delivered them a check for the 25¢ per acre, which was the consideration agreed upon and the reasonable and prevailing price for both such lease and mineral deed in that vicinity at the time; and that both Cruze and his wife expressed satisfaction with the transaction, and "said they needed the money and were glad to get it; that it was just like finding it."

In answer to another direct interrogatory, Blum was asked if the deal were closed on the day he first went to the Cruze ranch, and he replied: "It was closed later. I went to see Joe Cruze and his wife about executing an oil, gas and mineral

lease and conveying one-half the royalty to L. B. Cummings, and they told me to make out the instruments that they would have to sign and acknowledge, that they wanted to take it to their lawyer or banker and show it to him before they would sign same. They told me to return the next day and they would give me their answer. I returned the next afternoon with Mr. Eli Hill and they said they had made up their minds to sign and acknowledge the papers and make the deal, even though they had not had an opportunity to go to town to see anyone, as they needed the money and it was like finding it to get paid for the execution of said instruments. They then proceeded to sign and acknowledge said instruments before Eli Hill, and I paid them for same and they delivered the instruments to me."

In rebuttal Cruze testified, after having the foregoing answer of Blum read to him, that there was "not a word of truth in it."

Blum further testified that Cruze came to his office in San Antonio about one year later and asked that his lease and mineral deed interests be reconveyed to him, stating that they were worth more than was paid for them, and offered to return the purchase price paid therefor; and that he (Blum) told both Cruze and his wife, who accompanied him, that he secured the lease and mineral deed for Cummings, and that they would have to see him about the matter.

In rebuttal Cruze stated that his wife did not accompany him to San Antonio to see Blum, and gave his version of the conversation with Blum as follows: "When I walked in he did not know me as I told you. He said, 'Who are you?' I said, 'I am one of your Hays County victims, bunch of them that you forged them mineral deeds over there.' He said—he jumped up and grabbed a chair and started, well he was going to hit me. I said, 'Blum, I never come here for no fight, no battle.' I said, 'I never come here for no battle whatever.' "

Cruze further testified:

"When I convinced him I didn't come there for any battle he just slunk. He said, 'Cruze, did you get your money for that deal?' I said, 'What deal?' 'The deal we made.' I said, 'I didn't.' He said, 'Did you come here to indict me or arrest me.'

\* \* \* \* \* \*

"Q. Then state briefly what you told him with reference to the mineral deed?

A. I told him it was a forgery, that I wanted my title back.

"Q. All right, just a minute. Then what, if anything, did he say with reference to what he would do? A. He agreed to get this mineral deed and everything and have it stricken off the record here in not over thirty days."

Cruze testified that he and his wife only signed a regular form 88 oil and gas lease, and that Blum told him before he signed the lease that he was blocking up some acreage for the purpose of drilling an oil well, which was to include his ranch, the Gay Harris ranch, the Gay ranch, and the Dobie ranch, and showed him a map depicting the location of said ranches, which adjoined each other. Harris testified that Blum told him the same things and showed him the map when he came to secure his lease, on May 3, 1929; that Blum told him he had secured the Cruze lease and the Dobie lease. The records of the Harris lease and mineral deed, and the testimony of Harris that he did not execute the mineral deed, and that it was a forgery, were introduced after Blum testified that he saw Cruze and wife sign the mineral deed in question. Blum testified that he secured by an agent a lease and a mineral deed to one-half the minerals on each the Gay and Dobie ranches. No other testimony as to these two transactions was adduced. Both the Harris lease and mineral deed were to Blum as grantee, and both were recorded. The mineral lease from Cruze and wife to Cummings was not recorded, and its whereabouts was unknown; and the whereabouts of Cummings was unknown at the time of the trial.

Four bankers with whom Joe Cruze had done business for varying numbers of years, each examined the signature on the purported mineral deed from Cruze and wife to Cummings, and each gave as his opinion that it was not his signature. Each of them examined a large number of checks signed by Cruze, identified them as signed by him, and by comparison each gave as his opinion that the name of Joe Cruze on the mineral deed was not his signature. An expert on handwriting testified for appellants that he had examined some of the checks and the mineral deed, had made enlarged photostatic copies of these signatures of Joe Cruze, and after testifying to certain similarities of the signatures, gave as his opinion that the signature of Joe Cruze on the mineral deed to Cummings

was his signature. The checks and photostatic copies prepared by the expert were sent up with the record and are before us.

■ The general rule of res inter alios acta as applied by the courts of this State in civil cases is that each act or transaction sued upon must be established by its own facts and circumstances and cannot be established by the character or reputation of the parties, nor by acts or transactions of a like or similar nature by one of the parties with other persons, nor even by separate and independent like or similar acts or transactions between the same parties. 17 Tex.Jur., 379, § 131, and cases there cited; Houston Oil Co. v. Village Mills Co., Tex.Com.App., 241 S.W. 122; Stowe v. Wooten, Tex.Com.App., 62 S.W. 2d 67, affirming Tex.Civ.App., 37 S.W. 2d 1055. An exception to this general rule, stated in 17 Tex.Jur. 383, § 133, is that "when the intent with which an act is done is material, other similar acts of the party whose conduct is drawn in question may be shown, provided they are so connected with the transaction under consideration in point of time that they may all be regarded as parts of a system, scheme or plan."

■ The Harris lease and mineral deed to Blum, and Harris' evidence that the latter was a forgery were admitted under the theory of evidencing design or system. The foregoing facts, however, do not bring the evidence complained of within such exception. In order to do so the intent of the party whose conduct is drawn in question must be material to the wrongful act or transaction charged in the suit; and the proof or evidence must establish a definite prior design or system which included the doing of the act charged as a part of its consummation. Wigmore on The Science of Judicial Proof, 3d Ed., 220, 221, § 120; Wigmore on Evidence, §§ 304 and 315; McCormick & Ray on Texas Law of Evidence, §§ 695 and 696, wherein it is said that "wherever knowledge, intent or plan are relevant in a civil case" other acts of a similar nature and so closely connected with the act charged as to disclose a general plan or scheme are admissible. The fact that Balsar Blum may have turned up with two forged mineral deeds executed a few days apart and under similar transactions between different parties was not the issue to be determined in the instant case. Under the pleadings and proof in the instant case the question presented was whether Cruze signed the mineral deed

sought to be canceled by this suit, or whether same was a forgery. This is conceded by appellee wherein he states in his brief that "the real question, however, is not necessarily whether Balsar Blum committed the forgery, but relates to whether or not the plaintiff Joe Cruze executed same." The sole issue submitted to the jury was whether Cruze signed the mineral deed, and under its answer that he did not, Cruze was entitled to judgment canceling the mineral deed, regardless of who may have been the forger thereof; and also regardless of the intent of the forger. The facts bring the case within the rule as to other forgeries in a civil case as announced by this court in Kingsbury v. Waco State Bank, 30 Tex.Civ.App. 387, 70 S.W. 551, which was an action upon a note to which the appellants claimed their signatures were forged as joint makers and indorsers by the maker of the note. The court excluded evidence of forgeries by the maker of other obligations on other persons at about the same time the note in suit was executed. The court applied the rule in criminal cases that evidence of other forgeries may be admitted in evidence for the purpose of showing intent, but distinguished the case under consideration as not involving intent of the person alleged to have committed the other forgeries; the court holding that the only issue involved was whether appellants' names were signed to the note by themselves or by their authority, and that a negative finding of the issue would discharge appellants from liability, regardless of the intent of the alleged forger.

Another case in point is Lockney State Bank v. Bolin, Tex.Civ.App., 184 S.W. 553, 554, which was an action upon a note which the defendant claimed was forged by one Garrison, and which defendant testified Garrison admitted having forged; the court holding that defendant could not show that Garrison had forged the names of other parties to checks on plaintiff bank, no further connection between such forgeries being shown, and holding as follows: "The general rule is that you cannot convict a man of one offense by showing the commission of similar offenses. However, when the object of such collateral matter is to show system, or design, or if similar offenses tend to establish identity, or intent, they may be placed in evidence. In this case, * * * it is a plain issue of Bolin's signature, or Garrison's forgery, and the question of Garrison's intent or identity, to be shown by the commission of

similar offenses, of course, are not in the case. * * * The danger of inferring that an act is proven because a similar act has been admitted, unless there is some connection, is apparent."

It is true that if Blum were charged with the criminal act of forgery of the Cruze mineral deed, evidence of other forgeries by Blum happening about the same time would be admissible, because his intent or motive would be at issue. The evidence of such other forgeries would be admissible not only to show intent or motive, but to show design or system. In such criminal prosecution, however, the court would be required to plainly charge the jury that they must find the accused not only forged the Cruze mineral deed, but must also find that he forged the other instruments in evidence; and that such collateral forgeries could only be considered by the jury for the purpose of showing the intent of the accused and his system or plan of conduct, and for no other purpose. Fry v. State, 83 Tex.Cr.R. 500, 203 S.W. 1096; McCormick & Ray, Texas Evidence, Sec. 695. And as is said in McCormick & Ray on Texas Evidence, Sec. 696: "Wherever knowledge, intent, or plan are relevant in a civil case the principles discussed in the preceding section (relating to criminal cases) apply with equal force."

■ Chief among the civil cases are cases of fraud, especially involving false representations or fraudulent transfers, but in such a case the issue is the intent or knowledge with which the representation or transfer is made, and which intent is at issue in the civil suit. Forgery under the same circumstances would come within the exception. But as hereinabove pointed out the intent of Blum was not at issue in the instant case, because the issue as alleged, proved, and submitted to the jury was whether Cruze executed the mineral deed in question. See also Goree v. Uvalde Nat. Bank, Tex.Civ.App., 218 S.W. 620, writ dismissed; Compagnie Des Metauz v. Victoria Mfg. Co., Tex.Civ.App., 107 S.W. 651; Belt v. Raguet, 27 Tex. 471; Houston Electric Co. v. McLeroy, Tex.Civ.App., 153 S.W.2d 617; Shaw v. Cone, Tex.Civ. App., 56 S.W.2d 667; Blondeau v. Sommer, Tex.Civ.App., 99 S.W.2d 668; 32 C.J.S., Evidence, p. 433, §§ 578, 579.

■■ Under our holding that the Harris lease and mineral deed and his testimony that the latter was a forgery were not admissible as evidencing design or scheme, because no issue of the intent or motive of Blum was involved under the pleadings and proof in the instant case, any question of the sufficiency of the evidence to show design or system becomes immaterial. Suffice it to say, however, that the evidence of design or system related only to the blocking up of oil and gas leases for the purpose of drilling an oil well thereon. Nothing was said in the negotiations leading to the securing of the leases about a mineral deed to one-half the minerals. Blum testified that he secured an oil lease and a mineral deed to one-half interest in the minerals on the Cruze ranch for Cummings, and through an agent secured a lease and a mineral deed to one-half the minerals on each the Dobie and the Gay ranches; and that the consideration for both instruments in each instance was 25¢ per acre, which was the reasonable and prevailing price therefor. He was not asked about the Harris lease and mineral deed to himself. Cruze and Harris each testified that he did not sign the mineral deed attributed to him, and that his purported signature thereon was a forgery. From these facts the only possible circumstance or inference of design or system with respect to the forgery of such mineral deeds is that in securing the leases Blum was afforded the opportunity of seeing and of probably forging the signatures of Cruze and of Harris to the mineral deed purported to have been executed by each of them. So, other than the alleged forgery of the Cruze mineral deed in suit, only one other forgery, that of the Harris mineral deed, was attempted to be shown as evidence of other forgeries to establish design or system. The rule is that if design or system has any material bearing on any issue in the case, it must be of other similar acts or transactions as distinguished from occasional or a specific instance of similar character. Quanah A. & P. R. Co. v. Bone, Tex.Civ.App., 199 S.W. 332; 17 Tex.Jur. 384.

■ Nor is there any merit to the contention of appellee that since Cruze testified that he did not sign the mineral deed to Cummings, and Blum testified that he did sign it in his presence, the evidence relating to the Harris lease and mineral deed to Blum, and the testimony of Harris that he did not sign the latter and that it was a forgery, were admissible as a part of the scheme or plan to block up the leases and as bearing upon the surrounding circum-

stances which would enable the jury to properly pass upon the credibility of the two witnesses,—that is, as to which one was more likely to be telling the truth about the matter. The introduction of the evidence of the forgery of the Harris mineral deed would merely permit proof of Blum's intent by showing another forgery by him without his intent being the issue involved in the suit. There seems to be no controversy of the fact that Blum was blocking up leases on the four tracts of land for the purpose of drilling an oil well thereon. But the question of whether he forged the mineral deed from Cruze to Cummings was not at issue in the case. The issue was whether Cruze signed the mineral deed, or whether it was a forgery regardless of who may have signed it. The signing of the mineral deed by Cruze was the act or transaction involved in the case, and the foregoing rule of res inter alios acta requires that the "act or transaction sued upon be established by its own facts and circumstances and cannot be established by the character or reputation of the parties." The danger of attempting to establish the credibility or lack of credibility of a witness or party to the suit by proving separate and distinct forgeries is apparent, and particularly so when the intent of the witness whose conduct is drawn in question is not involved as an issue in the case.

■ Points 11 to 19, both inclusive, are briefed by appellants under one statement. They complain of the introduction in evidence of a mass of testimony of Cruze and also of Blum as being irrelevant and prejudicial and hearsay. The testimony of Cruze objected to by appellants is detailed under our foregoing statements of his testimony relating to the circumstances and conversations with Blum and Hill before the execution by Cruze and wife of an oil and gas lease, which both Cruze and Blum testified they executed, Cruze testifying that he thought it was to Blum, and that nothing was said about Cummings; and of Cruze's foregoing testimony relating to the absence of a notary seal and his desire for a copy of the lease, and the agreement to meet Blum and Hill in Wimberley where a seal would be placed upon the lease and a copy delivered to him; which they failed to do; and of Cruze's foregoing testimony of his trip to Blum's office and their conversation there as detailed hereinabove; and also of the cross-interrogatories to Blum seeking to locate the lease to Cummings

and to ascertain if it had been recorded. Other evidence showed that said lease was never recorded. All of the foregoing testimony was material to the issue of whether Cruze signed the mineral deed in question, or whether it was a forgery; and especially so in view of the evidence of Blum that Cruze did execute in his presence both the lease and mineral deed to Cummings. Nor was there any reversible error as to side-bar remarks of appellee's counsel with respect to the objections of appellants' attorney to the foregoing testimony, and particularly so in view of the admonition of the court not to indulge in said side-bar remarks, given in the presence of the jury.

Points 20 to 29 complain of testimony relating to the lease to Cummings and as to its whereabouts; and of testimony relating to interrogatories to Blum eliciting from him the fact that he was engaged from January to August, 1929, in securing many oil and gas leases in the Wimberley vicinity of Hays County, and during which time he received the lease and mineral deed from Cruze to Cummings. No question was raised as to any of these transactions, except the Cruze mineral deed to Cummings, and the Harris mineral deed to Blum; and as to the latter we have herein ruled that it should not have been admitted. Except as to it the testimony was admissible, and apparently was so introduced as showing the business in which Blum was engaged, and being so engaged when he obtained the Cruze lease to Cummings about which there is no dispute, and as bearing upon his claim that he secured the mineral deed from Cruze to Cummings as a part of the same transaction, and for which he testified that he paid 25¢ per acre for both conveyances.

■ Points 30 to 33, both inclusive, complain of the admission of the conversations between Cruze and Blum at the latter's office in San Antonio. These conversations and the occasion for them are set out in our foregoing findings of fact. Suffice it to say that Cruze testified that shortly after discovering the alleged forged mineral deed from himself to Cummings of record, he went to Blum for an explanation of it and to adjust the matter. Blum gave his version of the conversations and in rebuttal Cruze gave his versions. Manifestly, the acts and conduct of Blum when confronted with the charge that he had forged the mineral deed and his promise to remedy the wrong were admissible upon the issue that Cruze did not sign the mineral deed, and

that it was a forgery as alleged and testified by him.

■ It may be here observed, as pointed out in our foregoing findings of fact, that much of the testimony complained of was in rebuttal of the testimony of Blum, and for that purpose it was also admissible.

■ Furthermore, with respect to the claim that much of the foregoing testimony was hearsay as to the present owners and appellants, who had no knowledge that the recorded mineral deed was a forgery, it may be observed that this is a forgery case, and if the mineral deed was forged as alleged, then it is void, and no valid right or claim can exist in favor of any one under it. Appellants, though innocent purchasers, stand in no better position before the court than would Blum or any one who may have acquired any title or interest by virtue of or emanating from the forged mineral deed.

■ By points 34, 35, 38 and 43 it is contended that the court erred in refusing appellants an instructed verdict, because the mineral deed in question was introduced by appellee without limitation and in consequence title to one-half of the minerals was shown to be in appellants; and because there was no evidence offered to overcome the verity of the notary's certificate on the mineral deed; and because of insufficiency of the evidence to allow a recovery by appellee. The record does not show that the mineral deed was introduced without limitation. The whole theory of appellee's case as alleged and sought to be established by him on the trial was that he did not sign the mineral deed, and that it was a forgery. The foregoing facts, excluding the Harris transactions and testimony, fully authorize the submission of and the jury's finding that Cruze did not sign said mineral deed, and in consequence it was a forgery under the theory of the case as presented.

By points 36 and 39 it is contended that the jury finding that Cruze did not sign the mineral deed was insufficient to authorize the judgment canceling it. Our last above conclusions overrule this contention.

■ By points 40, 41 and 42 it is contended that the cause of action asserted by appellee Cruze to cancel the recorded mineral deed is barred (1) by the four-year statute of limitation, Vernon's Ann.Civ.St. art. 5529, (2) by estoppel, and (3) by laches and stale demand.

In Turner v. Germany, Tex.Civ.App., 94 S.W.2d 1177, 1179, it is held: "Adverse possession by limitation under the five or the ten years' statute was not effective, and did not prevail. It is well-settled law that a forged instrument is void and inoperative to those not signing, * * *. And forged instruments gain no validity from being recorded. * * * Neither does a purchaser from a grantee holding under a forged deed acquire any title as an innocent purchaser."

In Alamo Trust Co. v. Cunningham, Tex. Civ.App., 203 S.W. 413, 414, it is held: "This case must be considered exactly as though no deed from Scott and wife was upon record, and appellant occupies the same position that it would have occupied had the forged deed not been recorded. That instrument was a nullity, and its record could not and did not give it vitality. The forged deed could not affect the title to the land, and was therefore not entitled to record. The provisions of the statutes as to deeds being void as to subsequent purchasers, without notice, if not recorded, have no application to forged deeds. Reliance on a recorded forged deed may bring loss on him who so relies, but it cannot affect the rights of the owner of the property. A man cannot be deprived of his property by a forged deed, no matter in what good faith the party acted who claims under it. The forged instrument is as absolutely void and ineffective as though it had never existed."

■ The reasons stated in the foregoing quotations apply with equal force to the four-year statute of limitation. No development of the mineral interests in the land was ever attempted or asserted by possession or otherwise. There was no evidence offered attempting to show estoppel or stale demand as against the right of appellee to bring this suit to cancel the alleged forged mineral deed.

The judgment of the trial court is reversed and the cause remanded.

Reversed and remanded.