TEXAS COOKIE COMPANY, et al., Appellants,

v.

HENDRICKS & PERALTA, INC., Appellee.

No. 13–86–516–CV.

Court of Appeals of Texas, Corpus Christi.

Feb. 18, 1988.

Rehearing Denied March 17, 1988.

Richard W. Crews, Jr., Frank E. Weathered, Brin & Brin, Corpus Christi, for appellants.

Robert C. Wolter, Wood, Boykin, Wolter, Smith & Keys, Corpus Christi, for appellee.

Before KENNEDY, UTTER and BENAVIDES, JJ.

## OPINION

KENNEDY, Justice.

The appellants, Texas Cookie Company (TCC), Joel Wahlberg and Shirley Venable, bring this appeal from a judgment against them in favor of appellee, Hendricks and Peralta, Inc. (H & P), for violations of the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA), Tex.Bus. & Com. Code Ann. § 17.41–.63 (Vernon 1987).

TCC is a corporation established by Venable and Wahlberg for the purpose of supplying and supervising a network of retail outlets for the sale of cookies in malls and shopping centers. Lamont Hendricks, vice president of H & P, became interested in going into business with her daughter, Olive Peralta, president of H & P, by opening up such a store in South Texas. In the Spring of 1983, Hendricks and Venable discussed the possibility of franchising and visited potential locations. Hendricks had no prior business experience. In March or April of 1983, Venable and Wahlberg showed her a pro forma [1] which had income projections for the stores Hendricks wanted to open. Hendricks testified that Venable and Wahlberg assured her that her stores would reach at least the profit figures on the pro forma. In May of 1983, Hendricks and Peralta decided to obtain two franchises and incorporated H & P to control them. In June they signed franchise agreements for TCC stores in Corpus Christi and Kingsville. The Kingsville store was opened in August and the Corpus Christi store in October of 1983.

Subsequently, however, the stores did not perform as expected. Among other things, appellees claim that: the stores did not attain the profits represented to them on the pro forma; inadequate training in cookie baking was provided; inadequate cookie batter was supplied; and "build-out" costs for the stores exceeded the represented amount. After the stores proved unprofitable, both were closed in December of 1984. H & P brought the present action against appellants based on fraud, and under the DTPA on misrepresentations, failure to disclose and breach of warranty. A jury trial was held and based on the jury's answers to special issues, the trial court entered judgment for H & P, awarding it an aggregate amount of $433,893.80 in damages, interest and attorney's fees against the appellants.

Appellants' primary complaint in points of error one, two, four, seven, and fifteen through seventeen is that the franchise and assorted collateral services it contracted with appellee for are neither "goods" nor "services" under the definitional section of the DTPA, § 17.45. Appellant points us to *Crossland v. Canteen Corp.*, 711 F.2d 714, 721 (5th Cir.1983), for the proposition that a franchise is an intangible interest which is not covered by the DTPA. *Crossland*, however, concerned a transaction occurring under the 1973 version of the DTPA, which specifically excluded services for business or commercial use from its purview. The 1977 amendment to the DTPA eliminated this exclusion. *See Farmers & Merchants State Bank v. Ferguson*, 617 S.W.2d 918, 920 (Tex.1981).

■ The DTPA still excludes those transactions which convey wholly intangible property rights, such as money or accounts receivable, which are not associated with any collateral services. *See Riverside National Bank v. Lewis*, 603 S.W.2d 169, 174–75 (Tex.1980); *Snyders Smart Shop, Inc. v. Santi, Inc.*, 590 S.W.2d 167, 170 (Tex.Civ.App.—Corpus Christi 1979, no writ). A more difficult case arises when the intangible transferred carries with it a

1. A list of sales, expenses and net income.

host of collateral services on which the customer relies. In *First Federal Savings & Loan Association v. Ritenour,* 704 S.W. 2d 895, 898–900 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.), this Court held that the purchaser of a certificate of deposit was a consumer covered by the DTPA, in view of the full range of financial services that the defendant offered its customers in relation to their deposits, including the right to place a "hold" order on an account which was later dishonored and formed the basis of that suit. *See also La Sara Grain Co. v. First National Bank of Mercedes,* 673 S.W.2d 558, 564 (Tex.1984); *Farmers & Merchants State Bank v. Ferguson,* 605 S.W.2d 320, 324 (Tex.Civ.App.—Fort Worth 1980), *aff'd on other grounds,* 617 S.W.2d 918 (Tex.1981). The reasoning of *Ritenour* was further refined in *Federal Deposit Insurance Corp. v. Munn,* 804 F.2d 860, 865 (5th Cir.1986):

> Consequently, when a transaction's central objective is the acquisition of an intangible, Texas law requires a plaintiff to produce uncontroverted evidence similar to that produced in *Ritenour* in order to establish as a matter of law that a collateral service was an objective of the transaction and not merely incidental to the performance of a transaction excluded under the DTPA.

The collateral services which TCC was to provide H & P included a company training program, a confidential operating manual, and what was vaguely referred to in the franchise agreement as a "unique system," the characteristics of which are:

> special merchandising, marketing and specially designed facilities, interior and exterior layout and trade dress; standards and specifications for fixtures and equipment, methods for keeping books and records, inventory control system and training and supervision....

These services were clearly an objective of the transaction and not merely incidental to it. Without them, the franchise would have been little more than the right to sell products under the "Texas Cookie Company" name.

A similar situation arose in *Wheeler v. Box,* 671 S.W.2d 75, 78 (Tex.App.—Dallas 1984, writ ref'd n.r.e.), which involved the sale of a word processing franchise consisting of an operations manual, company training program and various advertising materials and supplies. Upholding the plaintiff's DTPA claim, the Court noted:

> [A]lthough the business entity itself was an intangible, it encompassed both tangible personal property and services purchased for use in the function of the business. Indeed, we would have to adopt a very narrow and strained interpretation, to conclude that the Boxes purchased neither tangible goods nor services.

*Id.,* 671 S.W.2d at 78–79; *see also Woo v. Great Southwestern Acceptance Corp.,* 565 S.W.2d 290 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.).

■ We hold that the franchise agreement in the present case involved the transfer of "goods or services" for purposes of the DTPA.

■ In addition, appellants complain that the failure to disclose upon which appellee relies for one of its DTPA claims is based solely on failure to give written disclosures required by the Federal Trade Commission, and that, since there is no private federal remedy, the failure to disclose cannot give rise to a DTPA claim either. Appellee brought this action on the ground that failure to make such written disclosures was a deceptive act under § 17.46(b). Appellee clearly did not bring an action under federal law. Appellants' violation of federal law was merely used as a basis for finding an independent violation of the DTPA. The DTPA itself provides in § 17.49(b) that: "The provisions of this subchapter do apply to any act or practice prohibited ... by a rule or regulation of the Federal Trade Commission." *See Woo,* 565 S.W.2d at 293; *Ferguson,* 605 S.W.2d at 325; *Hennigan v. Heights Savings Ass'n.,* 576 S.W.2d 126, 129 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.).

We overrule points one, two, four, seven, and fifteen through seventeen.

In points of error three, five and six, appellants complain that the trial court erred in its submission of certain special issues because, as worded, they fail to instruct the jury on the proper elements of damages. Special issue 11 asks:

What sum of money, if paid now in cash, would fairly and reasonably compensate Henricks & Peralta, Inc. from the damages, if any, that you found were caused by Texas Cookie Company in your answers to Special Issues Nos. 2, 4, 6, 8 and 10?

Special issues 2, 4, 6 and 10 each asked:

Do you find from a preponderance of the evidence the representations found in [the preceding special issue] were a producing cause of damages to Hendricks & Peralta, Inc.?

Special issue 8 asked:

Do you find from a preponderance of the evidence that the failure to disclose, found in Special Issue No. 7 was a producing cause of damages to Hendricks & Peralta, Inc.?

Appellants objected to all of these issues on the ground that they failed to limit the jury's consideration of damages to goods and services under the franchise agreement or matters which would be covered under the DTPA.

In general, the court's charge should limit the jury's consideration of damages by an instruction on the proper legal measure of damages. *Jackson v. Fontaine's Clinics, Inc.*, 499 S.W.2d 87, 90 (Tex.1973); *Sawyer v. Fitts*, 630 S.W.2d 872, 875 (Tex.App.—Fort Worth 1982, no writ). However, where the court has failed to include a limiting instruction, it is the complaining party's responsibility both to object to the charge and to tender written instructions on the proper measure of damages in substantially correct form. Tex.R. Civ.P. 279 [2]; *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 538 (Tex.1981);

*Donnelley Marketing v. Lionel Sosa, Inc.*, 716 S.W.2d 598, 602 (Tex.App.—Corpus Christi 1986, no writ); *Texas Power and Light Co. v. Barnhill*, 639 S.W.2d 331, 335 (Tex.App.—Texarkana 1982, writ ref'd n.r. e.). By failing to tender instructions, appellants have waived error. We overrule points three, five and six.

In points of error eight through twelve, appellants complain that the trial court erred in awarding an additional $100,000 to appellee based on the jury's response to Special Issue 21.

Appellee's pleadings requested actual damages, which are recoverable under § 17.50(b)(1), or, in the alternative, rescission of the franchise agreement and return of the price paid for the franchise, which is permitted under § 17.50(b)(3).

In its charge, the trial court submitted Special Issues 11, 12 and 13, which asked the jury what sum of money would compensate appellee for damages caused by appellants' misrepresentations and failure to disclose. The jury found aggregate actual damages against all three appellants totaling $200,000. Special Issue 21 asked: "What sum of money, if any, do you find from a preponderance of the evidence was paid by Hendricks & Peralta, Inc. to Texas Cookie Company as of April 1, 1986 for goods and services?" The jury answered $300,000.

The trial court's judgment awarded appellee the actual damages found by the jury in Special Issues 11, 12 and 13, including punitive damages and triple damages under § 17.50(b)(1) which are not challenged here. In addition, the trial court made the following finding and decree:

The jury for goods and services found that Hendricks & Peralta, Inc. paid $300,000.00 and then awarded damages of $125,000.00 [, $25,000] and 50,000 leaving $100,000.00 necessary to make Hendricks & Peralta, Inc. whole. As authorized by Section 17.50(b)(3) Texas Deceptive Trade Practice Act the Court finds Hendricks &

**2.** Now Tex.R.Civ.P. 278.

Peralta, Inc. should have One Hundred Thousand Dollars ($100,000.00) restored to it from Texas Cookie Company as that further amount was acquired in violation of said act. It is further DECREED that Hendricks & Peralta, Inc. have judgment against and recover of and from Texas Cookie Company the sum of One Hundred Thousand Dollars ($100,000.00).

■ The trial court's judgment, in effect, grants a complete recovery of damages under § 17.50(b)(1), and then supplements the actual damages awarded to equal an amount recoverable as restitution under § 17.50(b)(3). In *Smith v. Kinslow*, 598 S.W.2d 910, 915 (Tex.Civ.App.—Dallas 1980, no writ), the Court interpreted § 17.50(b) to mean that:

> restoration of the consideration paid, as authorized by subdivision (3), is a statutory recognition of the equitable remedy of rescission and restitution, based on the theory that the complaining party may elect to avoid the contract, surrender any benefits received, and recover what he parted with. The two remedies in this case [under subdivisions (1) and (3) ] may involve the same amount. See *Hallwood Cash Register Co. v. Berry*, 35 Tex.Civ.App. 554, 80 S.W. 857, 858–59 (1904, no writ). Nevertheless, they are mutually exclusive, since one is based on recovery of the benefits under the contract and the other on avoidance of the contract. *Jenkins v. Northwestern Pipe & Supply Co.*, 299 S.W. 857, 859 (Tex. Comm'n App.1927, holding approved); *Ulrich v. Galveston–Seeberg Electric Piano Co.*, 199 S.W. 310, 311 (Tex.Civ.App. —Galveston 1917, no writ). Consequently we hold that in a suit for breach of warranty, the complaining party may recover three times his actual damages under subdivision (1) or restoration of the consideration paid under subdivision (3), but not both.

*Id.* 598 S.W.2d at 915; *see also David McDavid Pontiac, Inc. v. Nix*, 681 S.W.2d 831 (Tex.App.—Dallas 1984, writ ref'd n.r. e.); *Whirlpool Corp. v. Texical, Inc.*, 649 S.W.2d 55 (Tex.App.—Corpus Christi 1982, no writ). In the present case, the trial court improperly attempted to supplement damages awarded under subdivision (1) with an additional award of restitution under subdivision (3). Points of error eight through twelve are sustained.

■ In point of error thirteen, appellants complain that the trial court erred in failing to submit an issue inquiring whether appellee was a consumer for purposes of the DTPA. "Consumer" is defined in § 17.45(4) as including a corporation which "seeks or acquires by purchase or lease, any goods or services." Whether or not a plaintiff is a "consumer" under the DTPA is a question of law to be determined by the trial court from the evidence. *Ritenour*, 704 S.W.2d at 898; *Reed v. Israel National Oil Co.*, 681 S.W.2d 228 (Tex. App.—Houston [1st Dist.] 1984, no writ); *Ridco, Inc. v. Sexton*, 623 S.W.2d 792 (Tex. App.—Fort Worth 1981, no writ). As we stated in response to the first points of error addressed above, the appellee's purchase of the present franchise involved the transfer of "goods or services" for purposes of the DTPA. The trial court correctly determined that appellee was a "consumer" and correctly refused to submit special issues on that point to the jury. *Ritenour*, 704 S.W.2d at 898; *Reed*, 681 S.W.2d at 233. Point of error thirteen is overruled.

In point of error fourteen, appellants complain that the trial court erred in submitting Special Issues 1, 3, 7 and 9 because, as worded, such issues did not restrict the jury to a time period prior to the actual sale of the franchises.

■ We note initially that Special Issue 7 did restrict the jury's consideration to failures to disclose occurring "prior to entering into the franchise agreements." In addition, although appellants perfected their appeal on Special Issues 1 and 3 by timely objection on the ground they now argue, they failed to object to Special Issue 9 on the ground that it did not restrict the jury to the proper time period and thus

waived error on that issue. Tex.R.Civ.P. 274; *Dickson Distributing Co. v. LeJune,* 662 S.W.2d 693, 696 (Tex.App.—Houston [14th Dist.] 1983, no writ).

This appeal then only concerns appellant's objection to Special Issues 1 & 3. The following special issues are pertinent to this objection.

Special Issue No. 1: Do you find from a preponderance of the evidence that Defendants represented to Hendricks & Peralta, Inc. that the franchise operations had characteristics, uses or benefits which they did not have?

Special Issue No. 2: Do you find from a preponderance of the evidence the representations found in Special Issue No. 1 were a *producing cause* of damages to Hendricks & Peralta, Inc.? [emphasis added]

Special Issue No. 3: Do you find from a preponderance of the evidence that Defendants represented to Hendricks & Peralta, Inc. that the franchise operations were of a particular standard or quality when they were of another?

Special Issue No. 4: Do you find from a preponderance of the evidence the representations found in Special Issue No. 3 were a *producing cause* of damages to Hendricks & Peralta, Inc.? [emphasis added]

■ We agree with the appellants that post-transaction representations are generally not subject to DTPA actions. *Royal Globe Insurance Co. v. Bar Consultants, Inc.,* 577 S.W.2d 688, 694 (Tex.1979); *Anthony Industries, Inc. v. Ragsdale,* 643 S.W.2d 167, 174 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.). The reason such representations are not actionable is that they generally could not have injured or adversely affected the plaintiff. *Royal Globe,* 577 S.W.2d at 695. The element necessary for the plaintiff to establish under the DTPA is that the misrepresentation or failure to disclose was a "producing cause" of damages. *Weitzel v. Barnes,* 691 S.W.2d 598, 600 (Tex.1985); *Ragsdale,* 643 S.W.2d at 175.

■ In the present case, Special Issues 2 and 4 correctly limited the jury to only those misrepresentations that were a "producing cause" of appellee's damages. More specific restrictions were not required. Point of error fourteen is overruled.

■ In point of error eighteen, appellants complain that the award of $29,250 in attorney's fees under the provisions of § 17.50(d) is incorrect because there was no evidence presented by appellee's attorney concerning how much of his time was spent on the DTPA action as opposed to the fraud action. However, because the DTPA and fraud causes of action in the present case are more or less inseparable, both requiring proof of the same facts, the total amount of attorney's fees can be awarded without requiring appellee's attorney to distinguish the time spent on each action. *Village Mobile Homes, Inc. v. Porter,* 716 S.W.2d 543, 552 (Tex.App.—Austin 1986, writ ref'd n.r.e.); *Burditt v. Sisk,* 710 S.W. 2d 114, 116 (Tex.App.—Corpus Christi 1986, no writ); *De La Fuente v. Home Savings Ass'n,* 669 S.W.2d 137, 146 (Tex. App.—Corpus Christi 1984, no writ). Point of error eighteen is overruled.

In point of error nineteen, appellants complain that the trial court erred in admitting into evidence the testimony of Craig Pyron, another TCC franchisee who claimed to have been the victim of similar misrepresentations by the appellants.

Pyron, a resident of Mississippi, testified that Venable and Wahlberg talked to him in April of 1983 about opening a TCC franchise. Pyron was in the cattle business and had no prior experience in selling cookies or franchise operations. After showing him several possible locations, Venable suggested a mall in Meridian, Mississippi, which Pyron claims Venable had first stated was a bad location. In April or May of 1983, Venable and Wahlberg showed him pro formas of the projected volume and profits of TCC stores. Pyron claimed they guaranteed he would make at least $42,000 a year in profits per store. In June or July

of 1983, Pyron signed a franchise agreement for the Meridian store. In September of 1983, he examined a Greenville, Mississippi, location for a second store and began operations in both locations in November of 1983.

The first two months were profitable at both locations. Subsequently, however, both stores began a steady decline in business which caused them to become unprofitable and they closed in June of 1984. Pyron attributed the decline to a number of problems he had with TCC, similar to those H & P had, including: inadequate cookie batter; oven problems; bad location; and insufficient training in cookie baking.

 The general rule in Texas is that prior acts or transactions by one of the parties with other persons are irrelevant, immaterial and highly prejudicial, and in violation of the rule that *res inter alios* acts are incompetent evidence, particularly in a civil case. *Texas Farm Bureau Mutual Insurance Co. v. Baker,* 596 S.W.2d 639, 642 (Tex.Civ.App.—Tyler 1980, writ ref'd n.r.e.); *Texas Osage Co–Operative Royalty Pool v. Cruze,* 191 S.W.2d 47, 51 (Tex.Civ. App.—Austin 1945, no writ). An exception to the general rule states that:

> when the *intent* with which an act is done is material, other similar acts of the party whose conduct is drawn in question may be shown, provided they are so connected with the transaction under consideration in point of time that they may all be regarded as parts of a system, scheme or plan. [Emphasis added].

*Baker,* 596 S.W.2d at 643; *see also Cruze,* 191 S.W.2d at 51. Thus, only where "intent," and not merely the occurrence of the act itself, is sought to be proved by similar acts are they admissible. In 2 Wigmore on Evidence § 354, the use of similar acts is limited to those situations "[w]hen the act itself is conceded or otherwise proved, and the object is to negative inadvertence or accident...." *See also Payne v. Hartford Fire Insurance Co.,* 409 S.W.2d 591, 594 (Tex.Civ.App.—Beaumont 1966, writ ref'd n.r.e.).

 In the present case, appellee offered Pyron's testimony for the stated purpose of showing a scheme or plan by appellants of fraudulent transactions with other franchisees at the same general time that they made the representations and transactions on which the present suit is based. Appellants timely objected to Pyron's testimony as inadmissible under the general rule stated above and asked for a limiting instruction, which the trial court gave, indicating to the jury that "the testimony of this witness can be considered by you only as it may conceivably show intent or a planned scheme or design on the part of the defendants in this case and for no other purpose."

The intent with which appellants represented the franchise was an issue in this case for purposes of the fraud action and of assessing additional damages for "knowing" violations of the DTPA under § 17.50(b)(1). Had Pyron testified to a past occurrence of unreasonably optimistic predictions followed by disappointing results, this may have been admissible to show that appellants were aware, at the time they represented the franchise potential to Hendricks, that such predictions were likely to be wrong. However, the representations made to Pyron and those made to appellees occurred at the same general time in the Spring of 1983. The decline in Pyron's business and the problems he had with TCC occurred after appellees had already signed their own franchise agreements. The appellants' intent cannot be judged on the basis of hindsight. Evidence of this other transaction only shows that appellants engaged in the same general conduct, knowingly or unknowingly, with more than one party at the same time. We hold that the testimony of Pyron was improperly admitted. *See Rose v. Intercontinental Bank, N.A.,* 705 S.W.2d 752, 757 (Tex.App. —Houston [1st Dist.] 1986, writ ref'd n.r. e.).

 However, appellate courts are not permitted to reverse a judgment and order a new trial unless they are of the opinion

that the error of the trial court amounted to such a denial of the rights of appellant as was reasonably calculated to, and probably did, cause the rendition of an improper judgment. Tex.R.App.P. 81; *Holmes v. J.C. Penney Co.,* 382 S.W.2d 472, 473 (Tex. 1964).

◼ In the present case, even though it was error to allow Pyron to testify as he did, we will presume that the jury obeyed the trial court's limiting instruction concerning its use of the evidence. *See In Re B.S.L.,* 579 S.W.2d 527, 530 (Tex.Civ. App.—San Antonio 1979, writ ref'd n.r.e.).

◼ In addition, shortly after Pyron testified, appellants presented the testimony of Larry McIntyre in rebuttal to the claim of scheme or plan. McIntyre, who had become a TCC franchisee in May of 1984, testified that appellants had not misrepresented the potential of his franchise, that they did not lead him to believe that representations on the pro formas were guarantees, and that he had operated stores that both met and fell short of the pro forma estimates. In view of the court's limiting instruction and the rebuttal testimony, we do not feel that Pyron's testimony was reasonably calculated to cause the rendition of an improper judgment. Point of error nineteen is overruled.

◼ In point of error twenty, appellants complain that the jury's answer to Special Issue 34 is against the great weight and preponderance of the evidence. The jury answered Special Issues 33 and 34 as follows:

> Special Issue No. 33: Did Henricks & Peralta, Inc. breach either franchise agreement?
>
> Answer: <u>Yes.</u>
>
> Special Issue No. 34: Was such breach of either franchise agreement, if any, a proximate cause of any damage to Texas Cookie Company, Inc.?
>
> Answer: <u>No.</u>

Appellants point to the uncontroverted testimony of Venable that after appellee abandoned the Kingsville store, it left Texas Cookie Company liable for rental of the premises at $1,401.75 per month for twenty-nine months. The lease agreement itself, under which Texas Cookie sublet the business premises to appellee, was never entered into evidence and the franchise agreement only mentions the franchisee's obligation to accept occupancy of the premises under a sublease to be negotiated in the future. The franchisee's obligation to pay the rent which Texas Cookie now claims as damages was created by the sublease and not the franchise agreement. Thus, the jury properly disregarded this amount in answering Special Issues 33 and 34. Point of error twenty is overruled.

In its cross-point, appellee complains that the trial court erred in reducing its attorney's fees from $38,000.00, as found by the jury, to $29,250.00, as awarded in the judgment. For this Court to consider the cross-point, the appellee must have in some manner apprised the trial court of its dissatisfaction with the judgment. *West Texas Utilities Co. v. Irvin,* 161 Tex. 5, 336 S.W. 2d 609, 610 (1960); *Tenngasco Gas Gathering Co. v. Fischer,* 653 S.W.2d 469, 474 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.).

In *Tenngasco,* we held that dissatisfaction could be implied when the trial court's judgment disregards a special issue on which appellee relied in his motion for judgment, which makes it "clear the trial court acted with full awareness of the appellee's position." *Tenngasco,* 653 S.W.2d at 474.

◼ In the present case, however, appellee asks this Court to extend the logic of *Tenngasco* to allow its cross-point to be preserved on the basis of evidence of appellee's attorney's fees offered at trial and a jury charge requested on appellee's attorney's fees. We hold that these pre-verdict actions were insufficient to apprise the trial court of appellee's dissatisfaction with a later reduction in the attorney's fees found by the jury. At the time it took such actions, appellee did not even know the amount of attorney's fees found by the

jury and which it now complains the trial court erred in disregarding. Appellee's cross-point is overruled.

We REFORM that portion of the judgment against Texas Cookie Company awarding appellee $100,000.00 in restitution. The remainder of the judgment of the trial court is AFFIRMED.