W. McD. BOWYER ET AL. V. R. W. BEARDON ET AL.

No. 4585.    Decided February 16, 1927.
(291 S. W., 219).

**1.—Chattel Mortgage—Crops Not Yet Planted.**

Either landlord or tenant may lawfully give a chattel mortgage on his share of contemplated crops not yet planted by the tenant; and this whether the rentals are to be paid in shares of the crop, or in cash, or partly in each.    Thus a mortgage by the owner of his share of the cotton to be raised, gathered and marketed by the tenant, or on its proceeds, and his money rent per acre for feedstuffs when grown and harvested, was valid. (Pp. 345-347).

**2.—Same—Purchaser of Land—Right to Rentals.**

A purchaser of land under rent becomes entitled to the rentals falling due at the time he is owner in the absence of any contract or reservation of same by the prior owner; but not so when by chattel mortgage or other contract by the prior owner, his right to receive such rentals has previously been segregated from the ownership and converted to a chattel interest. (P. 347).

**3.—Same.**

The act of the prior owner in mortgaging and registering his interest in crop to fall due when grown and harvested was such segregation of his interest and conversion of it to personalty.    (P. 347).

**4.—Same—Notice—Registration.**

Due registration of such chattel mortgage by the prior owner would constitute constructive notice to the subsequent purchaser of the land that the former's right to the rentals was segregated from the ownership and would not pass to the purchaser by sale of the land.    (P. 347).

**5.—Same—Sale of Land—Reservation of Rentals.**

The owner of land who has mortgaged his right to the rentals for the current year, on selling the land to another, may, by verbal agreement, before the rentals become due or division thereof has been made with the tenant, reserve from the purchaser the right to the rentals.(P. 347).

**6.—Assignment of Rentals—Notice.**

The owner of land may assign or mortgage his right to the rentals for the current year, giving prior right thereby over a subsequent purchaser of the land from him, but not without respect to notice to such purchaser. (P. 347).

**7.—Purchaser With Notice of Reservation of Rentals.**

The purchaser of land, in addition to the vendor's lien on the land for his purchase money notes, created a lien therefor on the shares of the tenant's crop for the current year acquired by his purchase. Subsequently selling the land he reserved from the vendee the right to such rentals for the current year. Such vendee, subject to the lien of the first vendee's purchase money notes, sold the land to another who had notice of such reservation in the sale to his vendor. The last vendee could not, by purchase of the note secured by such lien on the rentals, keep that lien alive for his benefit. Having bought subject to the lien of the purchase money note on the land and with notice of and assent to the reservation of the rentals on which it was also a lien, he knew that he was not to get the rentals to meet it. (Pp. 347, 348).

Questions certified from the Court of Civil Appeals for the Eleventh District, in an appeal from Jones County.

The Supreme Court referred the questions to the Commission of Appeals, Section B, for their opinion thereon and here adopt same as the answer of the court.

*Stinson, Coombes & Brooks,* for appellants.

Where the one raising the crop is a "cropper on the shares" the relation of landlord and tenant does not in fact exist; the relation being that of "joint owners" of the crop. In cases of this sort the landlord may mortgage his interest in the crop, or he may by a contract sever his interest in the crop from the realty and convert it into personal property. The authorities in support of that proposition are those following Willis v. Moore, 59 Texas, 628.

But on the other hand, a landlord is not the owner of any part of a growing crop being raised by his tenant before it is divided, nor is he the owner of any crop rentals to be paid when the crops are matured and harvested, or of the proceeds of the crop when sold, until the harvesting of the crop, or the sale of the same. He cannot, therefore, prior to the happening of these events, mortgage that which he does not own, nor create a lien thereon prior to his becoming such owner. Williams v. King, 206 S. W., 106; Brod v. Guess, 211 S. W., 299.

If the owner of land may mortgage the rents to become due him by the tenant, before the maturity of such rents, or if he may reserve such rents before they are due, when he sells and conveys the land, then he may in his deed reserve a lien on such

rents to secure a part of the purchase money for the land, and all subsequent purchasers of the land would be charged with notice thereof, and he who purchases the land subject to the unpaid purchase money, and who does not assume the same, and who takes up one of the purchase money notes for his own protection, would be protected on such note to the extent of such lien on such crop rentals.

*Thomas & Pope,* for appellees.

A landlord while owning the land in question can make a valid chattel mortgage lien on the rents to be grown thereon and said chattel mortgage lien will be valid and binding as against every person deraigning title to said land through said landlord or his assigns with notice of said chattel mortgage lien. Richardson v. Washington, 31 S. W., 614, 616, 617; Willis v. Moore, 59 Texas, 629; Sanger Bros. v. Hunsickle, 212 S. W., 514, 516; Brown v. Leath, 42 S. W., 655; F. Groose Co. v. F. Chittum, 100 S. W., 1006, 1011; Applegate v. Kilgore, 91 S. W., 238; Spiller v. W. J. Mann & Co., 187 S. W., 1014; Citizens Natl. Bank of Ennis v. First Guaranty State Bank of Palmer, 275 S. W., 860, 864.

The holder of a chattel mortgage on rents executed by the landlord owning the land in question at the date of execution of said mortgage has the right of foreclosure of said chattel mortgage and recovery of the market value of rents so converted as against a subsequent purchaser with notice from said landlord or from the assigns of said landlord. Same authorities.

A purchaser of land from a landlord or his vendees immediately prior to the harvest of growing crops thereon and when said purchaser is informed before his purchase money check has been paid for said land that the landlord has reserved the rents on said land and that the rents on the said crops are covered with the chattel mortgage in question, has actual notice of said reservation at the time of purchase of land, and the court is presumed to have so found by rendering his judgment for conversion of said rents on crops covered by said mortgage against said purchaser. Same authorities.

A purchaser of land on which a crop is being grown by tenant has constructive notice of the chattel mortgage on the rents where said chattel mortgage was executed by a landlord while the owner of said land, through which said landlord the purchaser deraigns title, where said chattel mortgage was after execution forthwith deposited with the county clerk of the county in which said land is situated and was so filed at the

time the purchaser acquired title to sand land, and the court is presumed to have so found in rendering judgment for the market value of the rents covered by said chattel mortgage against the purchaser converting same. Same authorities.

A landlord while owning the land in question can, when selling the said land, make a valid reservation of said rents and hold said rents as against any subsequent vendees of said land with notice, either actual or constructive, of said reservation. Same authorities.

A mortgage on rents is valid and binding on the mortgagor and those who deraign title through him whether the rental contract provides for the payment for the land's use in money or in a proportional part of the crops produced and harvested. Spillar v. Mann & Co., 187 S. W., 1014, 1015, 1016; Long v. Texas Farm Bureau Cotton Assn., 270 S. W., 561, 563; Vernon's Complete Texas Statutes (R. C. S.), Art. 1985.

Where Bowyer purchased a $500 vendor's lien note against the land he had previously purchased, by the purchase of said note before its maturity Bowyer paid his own debt, a debt for which his land was primarily liable, and thereby extinguished the debt and any chattel mortgage lien that might have been before payment security for the payment of said note to Lee, the original vendor and holder. Vernon's Complete Texas Statutes, 1920, Art. 2000, and Chattel Mortgage statute, Art. 5654; McKeen v. James, 25 S. W., 408; McDonald v. Jones, 93 S. W., 476; Sowder v. North Texas State Bank, 155 S. W., 971; Askey v. Strand, 240 S. W., 339, 341; Pomeroy on Equity, Vol. 3, p. 202, Sec. 1213; 27th Cyc., 1342, C. & 2.

The mortgage was a severance and when filed and deposited with the county clerk as required by law, it became notice to appellant Bowyer of all facts that an inquiry suggested by its terms if pursued would have revealed. Its description and terms were clear and explicit. Harless v. Jester, 97 S. W., 138; Conley v. Dimmit County State Bank, 181 S. W., 271, 272.

MR. JUDGE SPEER delivered the opinion of the Commission of Appeals, Section B.

The Chief Justice of the Court of Civil Appeals for the Eleventh District has certified to us the following questions:

1. "On December 11, 1923, Fred Herndon, the then owner of the land, conveyed the same to Lee and Castles, same having been previously rented to Jack Lantrip for the crop year of 1924 by verbal contract.

2. "Lee and Castles recognized Lantrip as their tenant and by verbal agreement between them the rental contract was

slightly amended, and after being so amended, it was in effect a rental contract between Lee and Castles and Jack Lantrip, by the terms of which Lantrip was to have exclusive possession and use of the land for the crop year 1924 and to plant, raise and pick, and have ginned and baled, a cotton crop thereon, and to plant, raise and harvest a crop of feedstuffs, and to pay as rental one-fourth of the cotton or proceeds thereof, and $3.00 per acre for the feedstuffs, after it had been harvested, but not later than October 1, 1924. The rental contract was not a contract of 'a cropper on the shares.'

3. "On April 12, 1924, Lee and Castles sold and conveyed the land to G. W. Thompson by deed with terms of general warranty for $7,750.00, of which $2,700.00 was cash and the remainder evidenced by Thompson's purchase money notes, the first for $500.00 and due January 1, 1925, and in which deed in addition to the vendor's lien retained against the land to secure the payment of said notes, a lien was retained on the 1924 crop rentals for the payment of the note due January 1, 1925, and interest on the entire series of notes.

4. "On June 26, 1924, G. W. Thompson executed to the First National Bank of Anson, which was forthwith filed for registration, a chattel mortgage on 'rents to be due me in 1924 on my place now worked by Jack Lantrip and boys,' to secure note dated June 26, 1924, due October 15, 1924, for $128.00, 'as well as to secure the payment of all other indebtedness now due and owing said bank and all indebtedness hereafter to become due and owing said bank.' Thompson then owed the bank two other notes, one dated March 15, 1924, due October 15, 1924, for $158.56, and one dated April 23, 1924, due November 1, 1924, for. $210.00, and thereafter he executed to said bank another note, dated August 6, 1924, due October 6, 1924, for $102.00.

5. "On August 11, 1924, G. W. Thompson sold and conveyed the land by terms of general warranty to R. W. Beardon, subject to the unpaid purchase money notes mentioned in the deed from Lee and Castles. No mention is made in the deed of the reservation of any rents. By verbal agreement, however, between Thompson and Beardon, of even date with the deed, Thompson reserved the 1924 crop rentals, but W. McD. Bowyer, the subsequent purchaser of the land from Beardon, had no notice or knowledge of such reservation, except that mentioned in paragraph 7 hereinafter stated. The feed crops were then laid by but not harvested, and the cotton had not then been picked. No agreement had yet been made with the tenant dividing the crops.

6. "On August 20, 1924, R. W. Beardon by terms of general warranty sold and conveyed the land to W. McD. Bowyer, subject to the unpaid purchase money notes mentioned in the deed from Lee and Castles to Thompson. This deed contained no reservation of rents, nor did Beardon verbally reserve the same.

7. "After the deed to W. McD. Bowyer had been delivered, and he had accepted the same, and had given Beardon a check for the cash payment, and Beardon had accepted such check for such cash payment, but before the check had been paid at the bank, Bowyer had actual notice of the chattel mortgage held by the bank, and of the verbal reservation made by Thompson mentioned in paragraph 5, supra. We find the evidence on this issue is sufficient to support the finding of the jury that Bowyer had notice in time to have stopped payment on the check.

8. "On October 3, 1924, the First National Bank transferred and assigned its four notes and the chattel mortgage to R. W. Beardon.

9. "When the cotton was picked, ginned and baled, and the feedstuffs harvested, Lantrip, the tenant, paid the rents to W. McD. Bowyer, the then owner of the land.

10. "Beardon, as the assignee of the bank, brought suit on the notes and chattel mortgage against Thompson, the maker of the notes, for the principal, interest and attorney's fees of the notes, and against Thompson, Bowyer and Lantrip for foreclosure of the chattel mortgage lien against the crop rentals, alleging that Bowyer and Lantrip had converted the same, and sought to hold them liable for such rentals to the extent of the debt. Bowyer filed a cross action against plaintiff, Beardon, and his co-defendant, Thompson, claiming the crop rentals, and Thompson filed a cross-action seeking to have the rents applied to plantiff's debt, and that he have judgment for the over plus under his verbal reservation. Bowyer pleaded in the alternative, if he was not the owner of such rents as the owner of the land, that he had purchased the $500.00 note, due January 1, 1925, mentioned in the deed from Lee and Castles to Thompson, and in which deed the lien was reserved on the crop rentals for the year 1924 to secure the same, and that having purchased said land subject to said note, he was entitled to purchase said note for his own protection, and to have the rents applied to the payment thereof, prior to the chattel mortgage lien, and that the lien being reserved in the deed, forming a link in the chain of title, all subsequent purchasers had constructive notice thereof, and that the bank had actual notice of such lien when it took such chattel mortgage. Bowyer undertook to prove the facts

of this alternative plea, and of notice to the bank, but the trial court refused to admit such proof, and Bowyer reserved his bills of exception.

"The jury returned the following special verdict:

"SPECIAL ISSUE NO. 1: Did John St. C. Bowyer, while acting as agent for defendant William McD. Bowyer, in the negotiation of the Beardon-Bowyer land deal in question, have actual notice that defendant G. W. Thompson claimed the rents by reservation on the land in question at the time the said John St. C. Bowyer made arrangements to borrow the money that was paid in consideration of the deed from Beardon to said land? Answer 'yes' or 'no.'   Answer 'Yes.'

"SPECIAL ISSUE NO. 2: Did John St. C. Bowyer, while acting as agent for defendant William McD. Bowyer, in the negotiation of the Beardon-Bowyer land deal in question, have actual notice that defendant G. W. Thompson claimed the rents by reservation on the land in question at the time the said John St. C. Bowyer made arrangements to borrow the money that was paid in consideration of the deed from Beardon to said land in time to have stopped the payment for said land?   Answer 'Yes' or 'No.'   Answer 'Yes.'

"Judgment was rendered in favor of Beardon against Thompson for the principal, interest and attorney's fees of the notes, and for foreclosure of the chattel mortgage against all parties, and in favor of Thompson for the over-plus in such rents, after the payment of such notes, and Bowyer and Lantrip were held for the conversion of said crop rentals, and Bowyer denied any recovery on his cross action.

12. "An appeal was duly prosecuted to this court by Bowyer and Lantrip, and on the original hearing this court affirmed the judgment of the trial court.

13. "Appellants filed in due time and form their motion for rehearing, and requested in said motion, and by separate motion, that a hearing on said motion for rehearing be stayed, and the questions involved be certified to the Supreme Court for adjudication—the decision of this court on the original hearing on the controlling questions in the case being in conflict with the decision of the Third Court of Civil Appeals, as will be hereinafter pointed out.

14. "This case being one in which the decision in this court is made final and conclusive by statute, appellants have brought themselves clearly within the provisions of Article 1855 of our Revised Civil Statutes of 1925, and we have granted their request

to certify the points in which the decision of this court is in conflict with the decision of the Third Court of Civil Appeals, and we also certify the points hereinafter stated because we deem it advisable to do so, and of sufficient importance to the jurisprudence of the State to require it.

### QUESTIONS CERTIFIED.

"QUESTION No. 1:

"The relation of landlord and tenant existing between Lee and Castles and Lantrip, under a contract, by the terms of which Lantrip was to have exclusive possession and use of the land, for the crop year of 1924, and to plant, raise and pick, and have ginned and baled, a crop of cotton thereon, and to plant, raise and harvest a crop of feedstuffs, and to pay as rental one-fourth of the cotton or of the proceeds of the cotton or seed, when picked, ginned, baled and sold, and $3.00 for the feedstuffs when harvested, but not later than October 1, and Thompson having subsequently purchased the land from Lee and Castles, was his chattel mortgage to the bank, dated June 26, 1924, on the rents to be due on said land for the crop year of 1924, before the feedstuffs was harvested and before the cotton was picked, ginned or baled, invalid because he was not then the owner of such crop rentals, as held by the Honorable Court of Civil Appeals of the Third Supreme Judicial District of Texas in the cases of William v. King, 206 S. W., 106, and Brod v. Guess, 211 S. W., 299, or was said mortgage valid as held in Sanger Bros. v. Hunsucker et al., 212 S. W., p. 514?

"QUESTION No. 2:

"Bowyer, being the owner of the land at the time the feedstuffs were harvested, and the cotton picked, ginned and baled, and when the crop rentals were due, was he by virtue of being then the owner of the land also the owner of such crop rentals?

"QUESTION No. 3:

"In view of conflict between the Fifth and Third Districts in cases Railway Co. v. Doke, 126 S. W., 1196, and Railway Co. v. Doke, 152 S. W., 1174, did Thompson, the owner of the land, under the facts related in Question No. 1, have such an interest in the crop rentals thereafter to become due, that he could mortgage the same, and was such mortgage subject to the registration laws of this State, and was such interest an interest in real estate or was it personal property?

"QUESTION No. 4:

"Did the registration of the chattel mortgage from Thompson to the bank constitute constructive notice to subsequent purchasers of the land of the lien of said mortgage on the 1924 crop rentals?

"QUESTION No. 5:

"May the owner of land, under the facts stated, when he sells the land to another, reserve by verbal agreement the crop rentals thereafter to become due, and before the crop or its proceeds had been divided, or an agreement had been reached with the tenant dividing the same, as the facts in this case show Thompson attempting to do when he sold to Beardon:

"QUESTION No. 6:

"Is the right to collect crop rentals, under the facts stated, such a right as may be assigned, and if so, does the first assignee acquire the better right without respect to notice?

"QUESTION No. 7:

"Could appellant McD. Bowyer under the facts stated keep the lien retained in the deed to Thompson on the crop rentals alive by having the $500.00 note transferred to said appellant or would the transfer of the $500.00 to appellant McD. Bowyer constitute the transaction a payment?

"On this question, we refer to Tiffany on Real Property, pp. 2482-2504-5 and 2612; Smith v. Cooley, 164 S. W., 1050, where a distinction is drawn between those cases where the owner of the land acquires the lien and those where the lien holder acquires the premises. As incidentally bearing on this question is called attention to York v. Robbins (Com. App.), 255 S. W., 720, loco Ct. 723; Silliman v. Gammage, 55 Texas, p. 365; West v. McCelvey Loan & Investment Co., 229 S. W., 913."

Question 1 is predicated upon the assumption that there is a conflict between the holding in the Williams-King and Brod-Guess cases on the one hand and Sanger Bros.-Hunsucker on the other. The holdings in these cases, however, are not necessarily, or at all, in conflict. In Williams-King and Brod-Guess the cases appear to be those of ordinary landlord and tenant where the landlord had no interest in any specific part of the crops to be produced. Indeed, in the Brod-Guess case it appears by the terms of the written contract the tenants were required to gather and sell the crops and to deposit the portion of the cash proceeds representing the rent in bank to the credit of the owner. While in Sanger Bros. v. Hunsucker, the relation of the parties

appears to be that of crop sharing in which the owner of course has a fixed interest in a specific part of the crops raised. In such a case he is as much the owner of his share as the tenant is owner of his share. We know of no reason why either may not execute a chattel mortgage upon his definite interest in such specific property. It is now too late to question the rule in this State that one may execute a chattel mortgage upon definite property, although such property is not at the time in existence but is in contemplation of both parties. So. Tex. Imp. etc. Co. v. Anahuac etc. Co. (Tex. Com. App.), 280 S. W. 521. The rule has often been applied to unplanted crops and there is no reason for any distinction between the respective rights of landlord and tenant in such respect. It necessarily follows if the tenant may mortgage his unplanted crop, the landlord likewise may mortgage a portion of the same crop, which under the terms of a rental contract is to become his absolutely.

But, the distinguishing of the cases discussed, on the facts, is of no importance to the present inquiry. As will be apparent from an examination of the authorities, the difficulty in those cases of chattel mortgage upon crops to be planted and the like has not been one of the legality of the subject matter, but rather one of describing or identifying any property at all. The general rule is that, in the absence of statutory provision to the contrary any personal property which is capable of being sold may be the subject of a mortgage. The word chattel is of no special significance when applied to a mortgage of chattels. "It is a very comprehensive term in our law and includes every species of property which is not real estate or a freehold"—a definition borrowed from 2 Kent's Commentary, 340; Gilchrist Transp. Co. v. Phoenix Ins. Co., 170 Fed. 279.

Our statutes not only do not provide to the contrary, but they indicate a very broad policy, as evidenced by a liberal right of assignment (Arts. 569, 570, Rev. Civ. Stats. of 1925), and especially Art. 5506 (5671), concerning Liens, providing:

"Nothing in this title shall be construed or considered as in any manner impairing or affecting the right of parties to create liens by special contract or agreement, nor shall it in any manner affect or impair other liens arising at common law or in equity or by any statute of this State or any other lien not treated of under this title."

The decisions are equally liberal in this respect. Richardson v. Washington, 88 Texas, 344, 31 S. W., 634; McMenamy, etc., Co. v. Dawley (Mo.), 165 S. W. 831.

Now, under the facts certified, whether Thompson was to be

paid his rentals in cotton or cash, or partly in cotton and partly in cash, the right to receive such payment in any event is properly subject to sale and assignment, and likewise subject to chattel mortgage. This being true, we think Question No. 1 should be answered that the mortgage was valid.

In answer to Question 2 it must be held that Bowyer was not necessarily the owner of the rents for 1924, merely because he was the owner of the land when such crops were harvested and the rentals became due. It is well settled that crops may be segregated from the land by any definite act showing such intention, thereafter becoming personalty, and as such assignable at will. In the absence of such segregation by the owner such rentals do go with the land.

What we have said under Question 1 answers Question 3. Of course if Thompson, the owner of the land at the time, had such property in the crop rentals that he could mortgage the same, then such mortgage and its registration were valid. His act in executing this instrument amounted to a segregation of the crops and rentals from the land so as to make them personalty subject to chattel mortgage and registration, and answering Question 4, this would constitute constructive notice to subsequent purchasers of the land of the lien on such rentals.

To Question 5 we answer the owner of land under rental to another may, upon sale of such land, reserve by verbal agreement the rentals thereafter to become due. This is a segregation by mutual agreement of the rentals from the land. Such segregation does not involve the statute of frauds in any way. Every chattel mortgage or sale of a growing crop is upheld on this theory.

We have already stated that crop rentals may be assigned, but it does not follow that the first assignee acquires the better right without respect to notice. But this is academic. It has no controlling effect in this case. As we understand the certificate, it is not a question of assignment of the rentals to become due. Of course a pure assignment may be executed by the owner of the land whether the same be for money rentals or a specific portion of the crop to be raised. This right to make an assignment by analogy includes the right to mortgage.

Finally, any answer we might give to Question 7 is probably immaterial. Nevertheless, the appellee, W. McD. Bowyer, under the facts stated in the certificate, could not by purchasing the $500 note executed by Thompson in the purchase of the land and secured by a lien upon the crop rentals for 1924, keep alive such lien as against Thompson's oral reservation of such rents

in his sale to Beardon. We base this statement upon the fact shown in the certificate that after Bowyer had received the deed to the land and had given Beardon a check for the cash payment, but before the check had been paid, he, Bowyer, had actual notice of the verbal reservation made by Thompson, in time to enable him to have stopped payment if he had so desired. He thus assented to such reservation and knew he was not to get the 1924 rentals.

So that, we recommend the questions certified be answered as above shown.

The opinion of the Commission of Appeals answering certified questions is adopted and ordered certified to the Court of Civil Appeals.

*C. M. Cureton,* Chief Justice.