Bruce PARR, Appellant,

v.

TAGCO INDUSTRIES, et al., Appellee.

No. 9233.

Court of Civil Appeals of Texas, Amarillo.

July 29, 1981.

Templeton & Garner, Robert E. Garner and Charles Watson, Amarillo, for appellant.

Gibson, Ochsner & Adkins, Wayne P. Sturdivant, Sanders, Saunders, Brian, Finney, Thomas & Smith, Robert H. Smith, Amarillo, for appellees.

REYNOLDS, Chief Justice.

The actions underlying and material to this appeal consist of an original suit on a sworn account and a counterclaim and cross-action seeking damages for, *inter alia,* usurious interest charged and acts declared unlawful by the Deceptive Trade Practices-Consumer Protection Act (DTPA).[1] The trial court accepted the jury's verdict which, when properly interpreted, authorizes relief under the cross-action, but the court rendered a take-nothing judgment against all parties. Affirmed in part; reversed and rendered in part.

In the spring of 1975, Bruce Parr, a Parmer County resident engaged in "agriculture in general," entered into negotiations with Parmer County Implement Company, Inc. (Parmer) for the construction of a grain handling, drying and storage facility to be erected on Parr's homestead. Parmer enlisted the assistance of Tagco Industries (Tagco), a partnership composed of Tim Gearn and Geary Gearn, which constructed such grain facilities for Parmer's customers. At the end of the negotiations between the three parties, they signed a cost estimate document expressing a contract price of $155,049 for the facility to be constructed by Tagco. After the facility was completed in September of 1975, Parr reported defects which were not corrected by Tagco.[2]

This litigation began when, in May of 1976, Tagco brought suit in the nature of a sworn account against Parr, seeking the recovery of open account amounts for materials, work and services supplied in the construction of the facility, and for a 24 November 1975 invoiced sum of $176.20 as one percent interest on the October balance of the account. Thereafter, Parmer became a party defendant and, following extensive pleadings and amendments, multiple causes of action (exclusive of claims for statutory interest, attorney's fees and costs), albeit denied and defended, were positioned for trial thusly:

---

1. The Deceptive Trade Practices-Consumer Protection Act, usually referred to as the DTPA, is a part of the Texas Business and Commerce Code, Section 17.41 *et seq.* (Vernon Supp. 1980–1981). All sections cited are those of the DTPA.

2. In the interim on 8 August 1975, Tagco Industries was incorporated under the laws of Texas.

Tagco sought (1) $13,632 from Parr, or alternatively from Parmer, on its sworn account which excluded the original claim for 1975 interest; and (2) contribution and indemnity from Parmer for any liability adjudged against Tagco in favor of Parr;

Parr sought (1) Tagco's forfeiture of the principal amount and all interest on the open account and recovery from Tagco of twice the amount of the $176.20 interest charged on the account under his action on an usurious interest charge; and (2) to recover from Tagco and Parmer actual damages of $142,000, to be trebled, on his causes of action for breach of contract and warranties, negligence, strict liability in tort and deceptive trade acts and practices;[3] and

Parmer sought from Tagco the $36,868.55 allegedly expended to correct the grain facility work performed by Tagco.

Trial was to a jury. Upon receipt of the jury's verdict, the trial court, after considering Parr's motion for judgment on the verdict and Tagco's motion for judgment non obstante veredicto, rendered a take-nothing judgment as to all parties.

Parr initiated this appeal, seeking judgment against Tagco on the verdict's answers favorable to his causes of action for usurious interest and for violation of the DTPA; and, by cross-point, Tagco seeks judgment against Parr on the answers in the verdict favorable to its cause of action on a sworn account. Although the entire case was brought forward on appeal and Parmer was named an appellee, neither Parr nor Tagco register any complaint to Parmer's exoneration from liability by the court's take-nothing judgment, neither asserts any liability against Parmer under the judgments they seek on appeal, and Parmer does not ask for any affirmative relief by way of appeal. Therefore, no fundamental error being apparent on the face of the

record, that portion of the take-nothing judgment affecting Parmer must be affirmed.

As the jury's verdict bears on Parr's and Tagco's initial appellate contentions, its findings therein, paraphrased and corresponding to the special issue numbers, are that:

(1) Tagco charged Parr interest on the October 1975 balance of his account during 1975; and

(25) Tagco sold and delivered to Parr items of goods, wares, merchandise, labor and services which were not included within the original agreement (26) of the reasonable value of $13,883.05.

Neither party properly has challenged with a point or a cross-point of error either the propriety of the issues or the evidential support for the findings;[4] hence, the factual findings must govern. *Adams v. American Quarter Horse Ass'n*, 583 S.W.2d 828, 833 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.).

With these facts established, Parr contends that Tagco's charge of interest in 1975 violated the usury laws, thereby entitling him to judgment decreeing Tagco's forfeiture of the open account balance and his recovery from Tagco of twice the amount of interest charged to him. To the contrary, Tagco contends that as a matter of law it did not charge usurious interest and, therefore, it is entitled to judgment against Parr for the open account balance found by the jury. Parr's contention is the sounder one.

 The amount and inception of interest that lawfully can be charged on an account are regulated by statute, a violation of which invokes penalties prescribed by other statutes. Interest in excess of the amount allowed by law is usury. Article

---

**3.** Parr and Parmer filed their agreement which, in essence, obligated Parmer to cooperate with Parr in establishing Tagco's liability to Parr, and limited Parmer's liability to Parr, if established either directly or by way of contribution and indemnity, to a maximum of $64,500.

**4.** *See* Hatchell and Calvert, *Some Problems of Supreme Court Review*, 6 St. Mary's L.J. 303, 323–24 (1974).

5069–1.01.[5] At the time Tagco charged Parr interest, Article 5069–1.03 provided for six percent annual interest on open accounts only from the first day of January after the same are made.[6] Article 5069–1.-06(1) prescribed that, except in a circumstance not applicable here, any person who charged interest greater than the amount authorized shall forfeit to the obligor twice the amount of interest charged.[7] Further, Article 5069–1.06(2) prescribed that if the interest charged is in excess of double the amount of interest allowed, the forfeiture shall include "as an additional penalty" all principal as well as interest.[8]

The jury established that Tagco charged Parr interest on a 1975 account in 1975 when, by existing law, a charge of interest was not allowed. Given the operative effect of the statutes in that factual situation, we held in *Hager v. Williams*, 593 S.W.2d 783 (Tex.Civ.App.—Amarillo 1979, no writ), that any interest charged during the calendar year in which the account is made is in excess of double the amount allowed and subjects the charger to the penalties prescribed. 593 S.W.2d at 789. We adhere to and apply that holding, which dictates that Tagco, having made an usurious interest charge in excess of double the amount allowed, forfeits the balance of the open account and is liable to Parr in the sum of (2 × $176.20) $352.40 on Parr's usurious interest cause of action.[9]

Next, Parr contends that, by virtue of the jury's findings in the verdict, he was entitled to judgment on his DTPA cause of action for triple the amount of actual damages found by the jury. The findings upon which Parr relies, again paraphrased and corresponding to the numbered special issues, are that:

(13) Tagco represented (4C) that the grain facility had characteristics which it does not have, (7C) a representation which adversely affected Parr;

(24) there is a $10,000 difference in the market value of the facility had it been constructed according to the agreement and as it was constructed at the time Parr took possession, "exclusive of any defect or deficiencies which are capable of being reasonably repaired as inquired about in Special Issue No. 24A;" and

(24A) the reasonable cost of necessary repairs and replacements to make the fa-

---

**5.** All references to Articles are to the Articles of the Texas Revised Civil Statutes Annotated (Vernon 1971; Vernon 1971 to 1980 Pamphlet Supp.).

**6.** The statute was amended to provide that, effective 27 August 1979, interest on all accounts shall be allowed commencing on the thirtieth day from and after the time when the sum is due and payable.

**7.** The statute was amended to increase the forfeiture penalty, effective 27 August 1979, to three times the amount of the usurious interest which, in no event, shall be less than the sum of $2,000 or twenty percent of the principal.

**8.** Both Article 5069–1.06(1) and Article 5069–1.06(2) impose liability for reasonable attorney fees to be fixed by the court, but any recovery of attorney's fees arising from the open account transaction has been waived by stipulation.

**9.** We have not overlooked Tagco's argument, made in defense of the trial court's denial of recovery to Parr on his usurious interest claim, that as a matter of law Tagco did not charge usurious interest. Failing to directly oppugn the jury's finding which produces the legal con-clusion that Tagco did charge usurious interest, Tagco can justify its argument only if there is an absence of proof that Tagco charged Parr interest during 1975. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex.L.Rev. 361, 362–64 (1960). The main justification is, so Tagco finds, in the sustention of a jury finding that usurious interest was not charged under parallel facts in *Killebrew v. Bartlett*, 568 S.W.2d 915 (Tex.Civ.App.—Amarillo 1978, no writ). The case is inapposite. In *Killebrew*, plaintiff's superseded original petition, containing the allegation of a charge for and a prayer to recover usurious interest, was not offered in evidence, but it could have been offered as evidence of a demand for usurious interest. 568 S.W.2d at 917. Here, Tagco's original petition, infected with the same vice, was offered and received as evidence of a demand for usurious interest charged. It is axiomatic that a contention of an absence of proof to support a jury finding cannot prevail when the finding has support in the evidence, *C. & R. Transport, Inc. v. Campbell*, 406 S.W.2d 191, 194 (Tex.1966); and, in that event, the finding cannot be disregarded or ignored. Tex.R.Civ.P. 301; *LeMaster v. Fort Worth Transit Co.*, 138 Tex. 512, 160 S.W.2d 224, 226 (1942).

cility conform to the warranties is $10,-000.

Tagco has not challenged the finding of its representation, an act declared unlawful, Section 17.46(b)(5), and for which a consumer may maintain an action if he has been adversely affected by it. Section 17.-50(a)(1). However, Tagco defends the take-nothing judgment as to Parr's DTPA cause of action, not only by attacking both the measure of damages and the evidential support for the damages found, but also on the ground that at the time of the transaction, Parr was not a "consumer" under the DTPA, the question we first address.

■ The DTPA offers a private cause of action only to one who comes within its definition of a "consumer." *Riverside Nat. Bank v. Lewis*, 603 S.W.2d 169, 173 (Tex. 1980). At the time of Tagco's representation in the spring of 1975 which gave rise to Parr's alleged DTPA cause of action,[10] the original enactment of the DTPA, effective 21 May 1973, remained unchanged.[11] By the enactment, a "consumer" was "an individual who seeks or acquires by purchase or lease, any goods or services," Section 17.-45(4); "goods" meant "tangible chattels bought for use," Section 17.45(1); and "services" was defined as "work, labor, and services for other than commercial or business use, including services furnished in connection with the sale or repair of goods." Section 17.45(2).

Thus, to maintain a private DTPA action, one must prove, as a part of his cause of action, that he was, within the DTPA's definition, a consumer. *Delaney Realty, Inc. v. Ozuna*, 593 S.W.2d 797, 800 (Tex.Civ.App.— El Paso), *writ ref'd n.r.e.*, 600 S.W.2d 780 (Tex.1980); *Baldwin v. Calcasieu Lumber Co.*, 588 S.W.2d 659, 660 (Tex.Civ.App.— Austin 1979, no writ). To qualify as a consumer, then, Parr was required to show that his seeking or acquisition of the grain facility was by purchase of either goods or services coming within the DTPA's definition.

■ At the outset, we are confronted with Tagco's proposal that instead of acquiring goods or services, Parr acquired permanent improvements to his real estate, which constituted a real estate transaction not then included in the scope of the DTPA's provisions.[12] We are not persuaded to accept the notion of a real estate transaction. At the time Tagco made the deceptive representation, Parr was neither seeking nor acquired real estate; rather, Parr was negotiating the purchase of a grain facility. The fact that the facility, upon construction on Parr's land, is now considered, under the general rule of law, to be a part of the realty does not convert the negotiated purchase of it into a real estate transaction.

■ Indisputably, Parr sought and bought the grain facility for use. The immediate inquiry is whether the facility constitutes "goods" as that term is defined by the DTPA. In defining "goods" to mean "tangible chattels," the legislature did not

---

**10.** The DTPA cause of action arises on the date of the deceptive act or practice, *Woods v. Littleton*, 554 S.W.2d 662, 666 (Tex.1977), and the statutory provisions which govern the cause are those in effect on that date. 1979 Tex.Gen. Laws, ch. 603 § 9, at 1332; *Riverside Nat. Bank v. Lewis*, 603 S.W.2d 169, 172 (Tex.1980).

**11.** The DTPA was amended effective 1 September 1975, 23 May 1977 and 27 August 1979.

**12.** The DTPA's Section 17.45(1) was amended effective 1 September 1975 to define "goods" as "tangible chattels or real property purchased or leased for use." It has been written that representations made in connection with the sale of real property before the amendment were not actionable, *Ferguson v. Beal* 588 S.W.2d 651 (Tex.Civ.App.—Houston [14th

Dist.] 1979, writ ref'd n.r.e.), particularly if the action is brought under Section 17.50. *Cape Conroe Limited v. Specht*, 525 S.W.2d 215 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ). *But cf. Woods v. Littleton*, 554 S.W.2d 662, 667–68 (Tex.1977) (holding that the deceptive acts or practices declared unlawful by Section 17.46(a) apply to a real estate transaction, and disapproving *Cape Conroe Limited v. Specht, supra*, to the extent that it suggests the protection of the DTPA would be denied a "consumer" of purchased "services" merely because the sale also included real estate). It should be noticed that Parr relies on one of the "laundry list" of acts or practices declared unlawful by Section 17.46(b).

see fit to define "chattels." The presumption is that the legislature used the word in, and intended it to have, its settled judicial sense. *Smith v. Texas Co.*, 53 S.W.2d 774, 776–77 (Tex.Com.App.1932, holdings approved); *Hufstedler v. Harral*, 54 S.W.2d 353, 355 (Tex.Civ.App.—Amarillo 1932, writ ref'd). In *Bowyer v. Beardon*, 116 Tex. 337, 291 S.W. 219, 222–23 (1927), it was declared that the word chattels "is a very comprehensive term in our law, and includes every species of property which is not real estate or a freehold." By this judicial definition of the word, the grain facility is classified as a chattel and, thereby, is "goods" by the DTPA's definition. It follows that Parr qualified as a consumer within the meaning of the DTPA. This determination is consistent with the legislature's instruction that a liberal construction and application must be given its enactment to promote its underlying purpose to protect consumers against deceptive business practices and actions. Section 17.44.

■ We now turn to the question of the measure of damages. A sufficient response to Parr's and Tagco's opposing positions on the question is supplied by the rationale expressed in *Jim Walter Homes, Inc. v. Castillo*, 616 S.W.2d 630, 635 (Tex.Civ.App.—Corpus Christi 1981, no writ), for applying in a DTPA action this general rule: the measure of damages is, at the election of the plaintiff, the remedial cost to bring the structure into compliance with the contract or the difference in value of the structure as constructed and its value had it been constructed without defects or deviations, whichever is less.

■ The rule is particularly applicable here. Faced with a sustained special exception to his pleaded damages, Parr elected to plead only for the cost of repair damages; he never offered, either before or during the trial, any pleading by which he sought difference in market value damages. Tagco timely and properly objected, because of the lack of supporting pleadings, to

both admitted evidence of the difference in market value and the submission of that issue to the jury. It is a familiar principle of our law that a party may only recover that measure of damages requested in his pleadings, and evidence of the difference in market value is not admissible under allegations of cost of repair. *Kissman v. Bendix Home Systems*, 587 S.W.2d 675, 677 (Tex. 1979); *South Plains Ready-Mix v. McDermett*, 278 S.W.2d 575, 577 (Tex.Civ.App.—Amarillo 1954, no writ). As a consequence, Parr is limited to the sustainable amount of damages for the cost of repairs.[13]

■ Tagco asserts the evidence is legally insufficient to support the jury's finding of $10,000 as the reasonable cost of necessary repairs. The premise of the assertion is that the only evidence of repair costs was given by the expert witness R. M. Slaughter, whose opinions were based entirely on hearsay and, therefore, were of no probative value. We do not agree. Our reading of the record reveals that Slaughter did state that his estimates of repair costs were those of an associated estimator; however, it was later evinced that Slaughter had personal knowledge of what the general cost of repair would be and based his opinion solely on that knowledge, his final figures subsequently being confirmed by the estimator in the interest of preciseness. In this situation, the general rule is: where it appears an expert's testimony is predicated both upon personal knowledge and upon hearsay, the testimony is admissible. *Moore v. Grantham*, 599 S.W.2d 287, 289 (Tex.1980). The rule is applicable here inasmuch as Slaughter merely utilized the services of the estimator to verify and confirm his personal opinion as to the cost of needed repairs. *See Lewis v. Southmore Savings Association*, 480 S.W.2d 180, 186–87 (Tex.1972).

■ With admissible record evidence of probative force to support the jury's finding, Parr established his entitlement to

---

**13.** Parenthetically, we note our view that, considering the phraseology of special issues numbered 24 and 24A and the jury's answers thereto, Parr only persuaded the jury that his total damages were $10,000.

judgment on his DTPA cause of action. His statutory recovery is fixed at (3 × $10,000) $30,000. Section 17.50(b)(1).[14]

▮▮▮▮ Parr also has brought forward a complaint about the trial judge's conduct during the trial. Inasmuch as the point is presented for alternative consideration as a basis for reversal and remand, we limit our address. Most of the referenced matters of alleged improper conduct were not objected to and, consequently, were not preserved for appellate review. *State v. Wilemon*, 393 S.W.2d 816, 818 (Tex.1965). The timely objected to conduct has been considered in the context of its occurrence during a long trial producing a voluminous record. It suffices to state that we do not perceive such conduct, as recorded, prejudiced Parr so as to call for a reversal. *See Crawford Chevrolet, Inc. v. McLarty*, 519 S.W.2d 656, 664 (Tex.Civ.App.—Amarillo 1975, no writ).

Accordingly, the portion of the judgment decreeing that Parr take nothing and pay one-half of the costs is reversed, and judgment is here rendered that Bruce Parr do have and recover of and from Tagco Industries the sum of $30,352.40, with interest thereon at the rate of nine percent per annum from 31 January 1980, the date of the trial court's judgment, until paid. Tex. R.Civ.P. 434. All costs are assessed against Tagco Industries. Tex.R.Civ.P. 448. In all other respects, the trial court's judgment is affirmed.

---

**14.** This Section, which provided a recovery of three times the amount of actual damages, was amended effective 27 August 1979 to fix the recovery at the amount of actual damages and, in addition, at two times the actual damages that does not exceed $1,000; provided, if the defendant's conduct was knowingly committed, the fact finder may award not more than three times the amount of actual damages in excess of $1,000.