Donald P. DOWLING, Appellant,

v.

NADW MARKETING, INC., and Henry Primeaux, Appellees.

No. 1510.

Court of Appeals of Texas, Tyler.

Nov. 12, 1981.

Rehearing Denied Dec. 17, 1981.

Larry Dowling, Austin, for appellant.

Lamar Holley, Dallas, for appellees.

MOORE, Justice.

Plaintiff, Donald P. Dowling, instituted suit against NADW MARKETING, INC. (NADW) and its employee, Henry Primeaux, seeking damages under the Deceptive Trade Practices Act, hereinafter called DTPA.[1] Pleading in the alternative, plaintiff sought to recover damages for common law fraud. Trial was to a jury. In response to special issues the jury found in favor of plaintiff on several issues relied on by the plaintiff as constituting fraud. Thereupon plaintiff moved for judgment alleging that the verdict was sufficient to support a judgment both for fraud and under the DTPA. Defendant responded with a motion for judgment non obstante veredicto alleging, among other grounds, that there was no evidence to support the jury's verdict. After a hearing on the motions, the trial court announced that the court was granting defendants' motion for judgment n.o.v. Accordingly, the court entered a take-nothing judgment against plaintiff from which judgment he perfected this appeal.

We affirm.

At the time this litigation arose, NADW Marketing, Inc., was engaged in the business of selling distributorships to entrepreneurs in certain geographical territories in Texas to solicit and sell new and used car dealers a program designed to shore-up dealer-customer relations upon the sale of used automobiles. NADW offered to train those seeking a territory and to supply all necessary material required to put the program into effect. The distributor buying the territory would in turn sell the program together with the necessary material to the car dealers. The car dealers in turn would then sell the program, which provided for limited warranties, towing services and discounts on repairs to their customers.

NADW advertised the availability of the program in a Dallas newspaper in February 1976. The ad read in part as follows: "BUSINESS OPPORTUNITY—Distributorships now available—Automotive Customer Relations System—No Competition—No Franchise Fees—No Residuals—Firm Buy Back Agreement—Your Investment Completely Secured—No Experience Necessary because we will completely train you."

In response to the newspaper ad Dowling agreed to purchase two territories covering the Dallas—Fort Worth Metroplex for the sum of $24,500.00. In February 1976 the parties entered into a written contract. Under the terms of the contract Dowling was made the exclusive distributor in the two territories and NADW agreed to furnish him with a large amount of material to be used in the business. Some of the material was designed to be sold to the car dealers who purchased the program, some of it was designed to be given to the dealers in carrying out the program and other materials were designed to be used by the distributor in the day-to-day operation of the distributorship in training his personnel and in explaining the program to the various car dealers.

Under the terms of the contract NADW agreed to train the distributor and two of his salesmen. After the sum of $24,500.00 was paid by Dowling, the employees of NADW spent approximately a week training Dowling and two of his salesmen in operating the business. They also assisted Dowling in attempting to sell the program to car dealers in the area. After operating the business about one week, Dowling became disillusioned and notified NADW that he wanted his money back. NADW offered to resell the business for him and give him the proceeds provided he would return the material supplied him. Dowling refused, stating he would return the material after NADW returned the $24,500.00. When NADW refused, Dowling instituted the present suit on July 16, 1976.

The written contract executed by the parties contains nothing indicating that NADW would return the purchase money in the event Dowling became dissatisfied. The only buy back agreement to be found in the contract is set forth in Paragraph VIII, which reads as follows:

1. All citations are to the Texas Business and Commerce Code.

NADW agrees to repurchase any NADW materials purchased after the original order, at the prices listed in Exhibit B within Thirty (30) days after receipt of said materials by DISTRIBUTOR, conditioned upon returned materials being in good and resellable condition.

Plaintiff first contends that the trial court erred in rendering judgment for defendants notwithstanding the jury's finding of fraud.

In response to the following numbered special issues, the jury found that (1) NADW, through its newspaper ad represented to Dowling that there would be a firm buy back agreement (6) that such representation was false; (11) that such representation was made for the purpose of causing possible purchasers to act in reliance on the representation; (16) Dowling relied on the representation in entering into the contract with NADW; (21) the representation that there would be a firm buy back agreement was made with knowledge that it was false; (26) such representation was material to Dowling in entering into the contract; (27) Dowling was damaged as a result of his acting in reliance on such false representation; and (28) that the sum of $12,000.00 would fairly and reasonably compensate him for the damages he suffered as a result of the false representation.

Plaintiff takes the position that the newspaper ad, standing alone, constitutes a representation that NADW would buy back the distributorships at the price he paid for them at any time he decided to leave the business. No contention is made that NADW or any of its agents, servants or employees orally promised to buy back the business, and there are no jury findings to that effect.

■ A representation must ordinarily concern a past or existing fact in order to be actionable. 25 Tex.Jur.2d Fraud and Deceit sec. 42, p. 679.

■ It is frequently declared to be the general rule of this state that the failure to discharge a promise of something to be done in the future is not fraud, and that to be actionable a false representation must be of a past or existing fact, rather than a promise, even though the promise is, without any excuse, subsequently broken. *Mason v. Mid-Continent Supply Co.*, 374 S.W.2d 922 (Tex.Civ.App.—Fort Worth 1964, writ ref'd n.r.e.); 25 Tex.Jur.2d Fraud and Deceit sec. 44, p. 682.

■ Obviously, the statement "Firm Buy Back Agreement" in the newspaper ad does not constitute a representation of a past or existing fact and therefore a cause of action for fraud cannot be established on that basis.

■ The next question is whether the statement, as Dowling contends, constitutes a promise or representation that NADW would "buy back" the distributorship at the same price paid by Dowling. As we view it, the newspaper ad amounted to nothing more than an invitation to those interested to contact NADW and make a trade. While the ad suggests that a firm buy back agreement was available, it did not go so far as to promise every purchaser that he would be entitled to his money back at any time he chose to leave. The newspaper ad does not state what would be bought back nor does it contain a price or time limit in which it would be bought back. Thus the statement is vague and uncertain as to its meaning. In our view, the statement was in the nature of "dealers talk" and, as such, does not form the basis of actionable fraud. 37 C.J.S. Fraud § 13, p. 241.

Therefore, if, as we have concluded, the newspaper ad did not relate to a past or existing fact and did not amount to an actionable representation or promise to do something in the future, it follows that the plaintiff failed to discharge his burden of showing actionable fraud. The findings made by the jury therefore become immaterial. Under these circumstances, the trial court was authorized to disregard the issues and render a take-nothing judgment against plaintiff upon his alleged cause of action for fraud. *First Am. Life Ins. v. Slaughter*, 400 S.W.2d 590 (Tex.Civ.App.—Houston 1966, writ ref'd n.r.e.); *Camco, Inc.*

*v. Evans,* 377 S.W.2d 703, 707 (Tex.Civ.App.—San Antonio 1963, writ ref'd n.r.e.).

■ Even if the newspaper ad could be construed as a promise on the part of NADW to buy back the business from Dowling at some future date as he contends, there is no finding that NADW did not intend to fulfill the promise at the time it was made. The burden was on Dowling to prove such intent. Mere failure to perform a promise is not of itself evidence of intent not to perform. Such failure might, under some circumstances, serve as a basis for such a breach of contract, but, in the absence of intent not to perform, it does not constitute fraud. *Crabtree v. Burkett,* 433 S.W.2d 9 (Tex.Civ.App.—Beaumont 1968); *Urso v. City of Dallas,* 221 S.W.2d 869 (Tex. Civ.App.—Dallas 1949, writ ref'd); 25 Tex. Jur.2d Fraud and Deceit, sec. 45; 37 C.J.S. Fraud § 11, p. 234. In the absence of a finding that NADW had no intention of performing the alleged future promise, a directed verdict against plaintiff upon his fraud action would have been proper. Rule 301, Tex.R.Civ.P. It follows that even if plaintiff's theory of recovery is based on fraud for failure to fulfill a promise, in the absence of a finding that defendants had no intent to fulfill the promises, the trial court was authorized to render judgment in favor of defendants notwithstanding the verdict.

■ This brings us to plaintiff's contention that the court erred in rendering a take-nothing judgment against him because the jury's finding of fraud was also sufficient to support a judgment in his favor under the Deceptive Trade Practices Act. It is his contention that since the jury found that the newspaper ad stating "firm buy back agreement" was false, defendants were in violation of sec. 17.46(b)(12) of the Act which prohibits a party from "representing that an agreement confers or involves rights, remedies, or obligations which it does not have . . . ." In reply defendants contend that the newspaper ad does not amount to a representation prohibited by the Act, and even if it does, plaintiff failed to establish he was a "consumer" as defined by the Act.

As we have heretofore stated, we do not believe the newspaper ad constituted a promise or a representation on the part of NADW that it would buy back a distributorship at the price paid by the purchaser at any time he desired to sell. Rather, as heretofore explained, we think the ad was merely an invitation to the public to come in and strike a bargain upon such terms and conditions as could be agreed upon. Consequently, we do not believe that the alleged representation amounted to a representation prohibited by the Act. If not, the jury's finding that the same was false would be immaterial and properly disregarded by the trial court.

If, however, the newspaper ad could be construed as a false representation in violation of the DTPA, we have concluded plaintiff would not be entitled to recover since he failed to establish he was a "consumer" as defined by the Act.

At the time this case arose, "consumer" was defined in sec. 17:45(4) of the Act as an "individual, partnership or corporation who seeks or acquires by purchase or lease, any goods or services." "Services" was defined in sec. 17:45(2) as "work, labor, or services purchased or leased for use for other than commercial or business use . . . ." The 1977 amendments deleted the phrase "for other than commercial or business use."

■ The plaintiff has the burden of proof on all elements of his cause of action under the DTPA. This includes proof that he was a consumer. *Farmers and Merchants State Bank v. Ferguson,* 617 S.W.2d 918 (Tex.1981).

■ The evidence shows and the plaintiff concedes that in purchasing the distributorship business he purchased both "goods" and "services" from defendants. While he may have become a "consumer" as to the goods purchased, by definition, he could not have been a "consumer" as to the "services" purchased from defendants, since at that time the DTPA applied only to "services" purchased for "other than commercial or business use." It is without dispute that the "services" purchased by plaintiff were

for commercial or business use in conducting the distributorship business.

In a hybrid situation involving the purchase of goods and services, such as we have here, the plaintiff has the burden to differentiate between the goods and services for which he could recover as a consumer under the Act and those relegated to common law remedies. *Baldwin v. Calcasieu Lumber Co.*, 588 S.W.2d 659 (Tex.Civ. App.—Austin 1979, no writ). The record fails to disclose the value of the goods purchased which would be subject to the DTPA and the value of the services which was not. In this state of the record, the trial court would not have been authorized to render judgment awarding plaintiff treble damages and attorney's fees under the Deceptive Trade Practices Act. It follows that the trial court properly disposed of the case by entering judgment notwithstanding the verdict.

Accordingly, the judgment is affirmed.