Michael WHEELER and Virginia
Wheeler, Appellants,

v.

James E. BOX and Susan K.
Box, Appellees.

No. 05–82–01340–CV.

Court of Appeals of Texas,
Dallas.

April 2, 1984.

E. Stratton Horres, Jr., Gardere & Wynne, Dallas, for appellants.

Richard A. Sayles, Barbara M.G. Lynn, Carrington, Coleman, Sloman & Blumenthal, Dallas, for appellees.

Before STEPHENS, WHITHAM and STEWART, JJ.

STEPHENS, Justice.

A suit for breach of contract, fraud, and violation of the Texas Deceptive Trade Practices Act was successfully maintained in the trial court, by James E. and Susan K. Box, appellees, resulting from the purchase of a word processing business on May 15, 1980, as franchisees of a corporation known as W.P. Services, Inc. Michael and Virginia Wheeler, appellants, were officers of the corporation. Appellees, after operating the new business for a short period of time, during which they incurred continuing losses, closed the business and sued the corporation, together with the Wheelers individually. Trial was to a jury, and after submission and answers to special issues, the trial court rendered judgment against the corporation and each of the Wheelers, jointly and severally, for $35,000; against the corporation for an additional sum of $2500; against Michael Wheeler for an additional sum of $5000; and against Virginia Wheeler for an additional sum of $2500. No appeal from the judgment is taken by the corporation.

The Wheelers bring forward fifteen points of error for our review. For the purposes of this opinion, these errors may be grouped into five categories. The first six points of error contend that the trial court committed reversible error by denying their motion for summary judgment; by denying their motion in limine; by overruling their motion to strike; by overruling their motion for a directed verdict; by overruling their motion for judgment on the verdict, or in the alternative, their motion for judgment non obstante veredicto; and finally, by overruling their motion for new trial. Each of these points is predicated upon the contention that certain parol evidence was improperly admitted to vary the terms of an unambiguous written contract. The next five points of error address the same actions of the trial court, contending that the alleged representations constitute mere "puffing," or opinions which would not support a jury issue on breach of contract, fraud, or a violation of the Texas Deceptive Trade Practices Act. The next two points of error contend that the appellees failed to sustain their burden of proof that they were consumers under the Texas Deceptive Trade Practices Act; and that appellants were not liable individually because they were acting solely as agents of the corporation, and not in their individual capacities. Finally, in their last two points of error, they complain that the jury's answer to special issues numbers 22 and 23 contradicted and irreconcilably conflicted with other answers, and thus would not support the judgment.

 Under their first six points of error, appellants base their argument and place their reliance on the cases of *Town North National Bank v. Broaddus*, 569 S.W.2d 489 (Tex.1978) and *Texas Export Development Corporation v. Schleder*, 519 S.W.2d 134 (Tex.Civ.App.—Dallas 1974, no writ), to support their contention that there must be some "trickery" employed to secure the execution of a written agreement before extrinsic evidence to show fraud in its inducement is admissible. These two cases do not stand for such a general proposition of law. Their holdings are much more narrow. These two cases merely hold that when a negotiable promis-

sory note has been executed, something more than the bare assertion that the maker was induced to execute the note by a promise of the payee, that he would not be liable for its payment, must be shown to support the contention that fraud in the inducement vitiated the note, thus permitting parol evidence under an exception to the rule. The case before us does not involve a negotiable promissory note. Numerous cases have held the parol evidence rule inapplicable to cases brought under the Texas Deceptive Trade Practices Act. *See Tom Benson Chevrolet, Inc. v. Alvarado*, 636 S.W.2d 815 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.); *Gonzalez v. Global Truck & Equipment, Inc.*, 625 S.W.2d 348 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ); *Oakes v. Guerra*, 603 S.W.2d 371 (Tex.Civ.App.—Amarillo 1980, no writ); *United Postage Corp. v. Kammeyer*, 581 S.W.2d 716 (Tex.Civ.App.—Dallas 1979, no writ). In light of these cases, we hold that the parol evidence in this case was admissible to prove fraud in the inducement.

■ Appellants next complain that the statements made, which are alleged to be material misrepresentations, were only "puffing", or opinions, and were not misrepresentations of material facts, sufficient to support the judgment. The Texas Supreme Court adopted the definition of "puffery," given in *Gulf Oil Corporation v. Federal Trade Commission*, 150 F.2d 106, 109 (5th Cir.1945). " 'Puffery' is an expression of opinion by a seller not made as a representation of fact." *Dowling v. NADW Marketing, Inc.*, 631 S.W.2d 726 (Tex.1982). Thirteen statements, allegedly made by the Wheelers, were offered for consideration by the jury. All thirteen of the statements were found by the jury to have been made; twelve of the statements were found to have been false; eight of the twelve statements were found to constitute deceptive trade practices within the meaning of the act; and each of those eight were found to be a producing cause of damages suffered by the Boxes. These eight statements were:

1. That the Wheelers would provide an efficient business operation;

2. That W.P. Services, Inc. and the Wheelers would give the Boxes their complete support;

3. That Mr. Box could train in the W.P. Services, Inc. office prior to installation of his equipment;

4. That W.P. Services, Inc. and the Wheelers would not let the Boxes' business fail;

5. That W.P. Services, Inc. and the Wheelers would buy the Boxes' business back if it did not work out;

6. That the Wheelers would personally fine tune the Boxes' business;

7. That the Wheelers would provide ten days training in Mr. Boxes' office;

8. That application for W.P. Services, Inc. trademark had been made as of May 15, 1980.

We hold these statements to be material representations made to the Boxes to induce them to purchase the business, and not mere "puffing," as the Wheelers claim.

Appellants next advance the argument that appellees failed to carry their burden of proof to show that they were consumers within the meaning of the Texas Deceptive Trade Practices Act. Although we find no case authority directly on point, we disagree with this argument.

■ As it existed in 1980, TEX.BUS. & COM.CODE ANN. § 17.45 (Vernon Supp. 1982–1983), defined a consumer as "an individual, partnership, corporation, or governmental entity who seeks or acquires by purchase or lease, any goods or services;" goods were defined as "tangible chattels or real property purchased or leased for use;" and services were defined as "work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods." Although the Deceptive Trade Practices Act has never defined "chattels," it was declared in *Bowyer v. Beardon*, 116 Tex. 337, 291 S.W. 219, 222–23 (1927), that the word chattel "is a very comprehensive term in our law, and includes every species of property which is not real estate or a freehold."

Tangible property includes both real and personal property. *Continental Homes Company v. Hilltown Property Owners Association, Inc.*, 529 S.W.2d 293, 296 (Tex.Civ.App.—Fort Worth 1975, no writ); *Erwin v. Steele*, 228 S.W.2d 882, 885 (Tex.Civ.App.—Dallas 1950, writ ref'd n.r.e.). Tangible property is commonly understood to be property that is capable of being handled or touched. *Lay v. Aetna Insurance Company*, 599 S.W.2d 684 (Tex.Civ.App.—Austin 1980, writ ref'd n.r.e.).

Appellants argue, in reliance upon the definitions contained in the act, that appellees purchased neither "goods" nor "services," contending that the business was not a "tangible chattel," or a "service" because appellees purchased a business, not "work, labor, or service."

In the case of *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535 (Tex.1981), the Camerons purchased a house and subsequently brought suit against the sellers' real estate agent, alleging that the agent was guilty of deceptive trade practices. Although the argument in that case was to the effect that the Camerons were not consumers because they had purchased nothing from the agent, only from the sellers, the court discussed the legislative intent as pertaining to consumers within the act's meaning. We glean from the opinion, as well as from the statute itself, that we must liberally construe the term consumer.

In several cases, the Texas Deceptive Trade Practices Act has been applied to the sale of distributorships. *Dowling v. NADW Marketing, Inc.*, 625 S.W.2d 392 (Tex.App.—Tyler 1981), rev'd on other grounds, 631 S.W.2d 726 (Tex.1982); *United Postage Corp. v. Kammeyer*, 581 S.W.2d 716 (Tex.Civ.App.—Dallas 1979, no writ); *Woo v. Great Southwestern Acceptance Corporation*, 565 S.W.2d 290 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.). Two of these cases have directly addressed the definition of "consumer." Faced with the question, this court, as well as the Tyler court, did not determine whether the sale of a business as such, constitutes the sale of "goods" or "services," but instead, they looked to the specific items included in the sale, to determine whether goods or services were involved. *See Dowling*, 625 S.W.2d at 396–97; *Kammeyer*, 581 S.W.2d at 721.

■ Additionally, in *Dowling*, applying the act as it existed prior to the 1977 amendment, which deleted from the definition of the word "services," the words "other than for commercial or business use," the court held that, in such a hybrid situation involving the purchase of both goods and services, the plaintiff had the burden to differentiate between the goods, for which he could recover under the act as a "consumer," and the services for which he could only recover under common law remedies. *See Dowling*, 625 S.W.2d at 397; *Baldwin v. Calcasieu Lumber Company*, 588 S.W.2d 659 (Tex.Civ.App.—Austin 1979, no writ). In light of the 1977 amendment, changing the definition of "services," we hold that a plaintiff is no longer required to differentiate between goods and services to prove that he is a consumer under the act.

■ Considering the wording of the contract between the parties, we find that although the parties specifically recognized that the business bargained for was basically a concept, rather than physical property, it also provided that the appellants provide to appellees, an operations manual, word processing programs, and art work and logo including negatives, together with an initial supply of presentation folders. Additionally, the contract provided that appellants would provide a guide and checklist enumerating needed office supplies, equipment furnishings and space requirements, and up to ten days on site assistance and training in Boxes' Dallas office. Additionally, the jury found that certain other services were to be rendered by the Wheelers in connection with the sale of the business.

We hold that the evidence in this case is sufficient to show that appellees were consumers within the meaning of the act. They purchased a business; although the business entity itself was an intangible, it

encompassed both tangible personal property and services purchased for use in the function of the business. Indeed, we would have to adopt a very narrow and strained interpretation, to conclude that the Boxes purchased neither tangible goods nor services.

 Appellants next advance the contention that they acted in the transaction solely as agents of the corporation, not in their individual capacities, and are therefore not liable individually. This contention is without merit. The jury found the Wheelers guilty of misrepresentations. The concurring opinion in *Light v. Wilson*, 663 S.W.2d 813 (Tex.1983) (Spears, J., concurring), sets forth in a detailed summation, the rule of law in Texas that has existed for more than a century: an agent is personally liable for his own torts. We hold the Wheelers personally liable for their misrepresentations to the Boxes.

In their final two points of error, appellants contend that two of the special issues contradict and are in conflict with the jury's answers to other special issues and therefore cannot support the judgment. By their answer to the first of these two special issues, the jury found that the appellants represented to the appellees that the value of the business was $68,000. The second special issue found the value of the business on the date of the sale to be $68,000. Appellants argue that since appellees paid $68,000, for a business represented to be worth $68,000, which was found to be in fact worth $68,000, they have suffered no damages. This argument would be persuasive, absent the representations made to induce appellees to buy the business. Appellants specifically represented to appellees, among other representations, that they would not let the business fail, and that if the business did not work out, they would buy it back. The jury found that appellants failed to perform these two significant promises, as well as the other six, to which we have previously referred. Had appellants fulfilled these two agreements, first to see that the business did not fail, and the alter-

native, to buy it back, then of course, appellees would have suffered no damages. Because of their failure to do so, the jury found damages as previously recited. We hold that the answer to these two special issues are not in irreconcilable conflict with the answers to other special issues. Appellants' final two points of error are overruled.

The judgment of the trial court is affirmed.